KENTUCKY FINANCE
COMPANY, Appellant,

v.

John SPRADLIN; Sharon Spradlin; Thomas Lafferty, Jr.; and Fidelity & Deposit Company of Maryland, Inc., Appellees.

Court of Appeals of Kentucky.

Oct. 10, 1986.

**844**

John David Preston, Perry & Preston, Paintsville, for appellant.

Thomas Lafferty, Jr. and Fidelity & Deposit Co. of Maryland, William S. Kendrick, Francis, Kazee & Francis, Prestonsburg, Pamela Todd Robinette, Stratton, May & Hays, P.S.C., Pikesville, for appellees.

John Spradlin and Sharon Spradlin, pro se.

Before LESTER, McDONALD and REYNOLDS, JJ.

LESTER, Judge.

This is an appeal from a judgment supported by findings of fact and conclusions of law dismissing the complaint of appellant which sought recovery of $2,748.70 plus interest upon a promissory note.

In 1983, Thomas Lafferty, Jr. was the Floyd County Clerk and John Spradlin was one of his deputies. Prior to May 23 of that year, John and Sharon Spradlin had acquired a 1982 Oldsmobile Cutlass automobile which they had financed through General Motors Acceptance Corporation which retained a duly recorded lien on the vehicle. For some undisclosed reason, the Spradlins obtained a loan of $4,085.48 (at an interest rate of 30.08% per annum) from Kentucky Finance Company giving therefor a promissory note secured by a lien upon the car. In so doing, the Spradlins presented to appellant a Certificate of Title and Registration reflecting that even though there was a lien in favor of GMAC that it had been released as of May 20, 1983, over the signature of "Thomas Lafferty, Jr." and bearing the county clerk's seal. Moreover, in the space on the document designated as "Registration Type" there was typed in "First Time/Lien."

The fact of the matter was that GMAC had not released its lien and it eventually repossessed the car. The Spradlins filed bankruptcy proceedings and appellant was placed in the position of having a $2,748.70 balance due it with no security. In an effort to recoup its debt, Kentucky Finance sought recovery against the Clerk, the Deputy Clerk and his wife, and the Clerk's Bonding Company. Lafferty and Fidelity & Deposit defended the action while the Spradlins elected not to do so. In dismissing the complaint, based upon the pleading and memoranda, the court found that Spradlin had committed the criminal act of forging Lafferty's name to the Certificate without the clerk's knowledge for the sole benefit of Spradlin which took the act outside of the scope of the deputy's duties. In addition, the court also determined that appellant had an obligation to protect its own interests by examining the clerk's records to learn for itself if any prior liens were reflected by financing statements rather than relying upon the representations of its customers. The issues upon appeal revolve around those conclusions.

It appears to us that the trial court imposes a duty upon a lender to examine the records concerning the chattel before it can secure itself with a first lien upon that chattel. We are unaware of any rule so requiring either as to personal or, for that matter, real property.

■ A financing statement is a means of notifying the public *prior* to the issuance of a certificate of title that a lien is or will be claimed on a vehicle. Perfection of the lien (for priority) dates from the time of filing. However, when the certificate is issued it would appear that the financing statement is merged into the certificate and the certificate becomes the only document necessary to achieve perfection. This is a reasonable interpretation of the second sentence of KRS 186A.190(1).

■ It requires no citation of authority to point out that the public must be able to rely upon documents certified by the county clerk's office and, in spite of the danger of forged releases, a release noted upon a certificate by a duly appointed deputy clerk is effective. Under this analysis, G.M.A.C. would become subordinated by virtue of the clerk's dishonesty. We realize that our view affords little protection to the public generally and G.M.A.C. particularly when a dishonest public servant issues a false certificate but we can only suggest a central filing system as exists in other states. Even though what we have said may appear harsh it nevertheless aligns Kentucky with other jurisdictions which emphasize the certificate of title as the sole record of liens. We find support in Professors Leibson and Nowka's text, *The Uniform Commercial Code of Kentucky* § 8.3(a), 713 at 718 (1983), where it is pointed out:

The fact that a financing statement must still be filed in the county clerk's office under the Certificate of Title Act—that, in fact, if a financing statement is not filed the title is not to be issued—should not result in the conclusion that perfection, and thus priority, can be accomplished by so filing. As noted, KRS 355.9-302(4) provides that when a statute requiring indication of a financing statement on a certificate of title exists, a security interest can be perfected only by that method. Given the language and intent of the act, the requirement of filing a financing statement is unnecessary for perfection and priority determinations. KRS 355.9-302(3) and (4), 186A.190(1) and (4), and 186A.195(1) mandate that the certificate of title governs the resolution of perfection and priority disputes.

Since the certificate of title governs and the filing of a financing statement is unnecessary for perfection and priority, then a search of the records is not a necessity and any determination to the contrary is erroneous.

The remaining issue for resolution concerns itself with the responsibility of the public officer, the Clerk, for the acts of his agent, the deputy. This proposition, standing alone, presents no difficulty, but in this litigation we have, as the parties and the court agree, a criminal act. We are cognizant of the high degree of trust and fidelity the public has every right to expect of their governmental officers. This principle is the common thread found in the leading treatises dealing with liabilities of officials and their employees. *See* 63 A Am.Jur.2d *Public Officers and Employees* § 197 et seq. (1978). This jurisdiction, while adhering to the foregoing, differentiates between the liability of the officer for his employee based upon the capacity in which the agent acts. The first duty of the official is to retain the services of employees with suitable skills for the position and if he does so he is not responsible for their negligence. *Moores v. Fayette County*, Ky., 418 S.W.2d 412, 414 (1967). There is no allegation here that Spradlin did not have the necessary skills for the job. We make the observation that if the principal is not liable for the negligence of the employee, then, a fortiori, he should not be liable for the criminal acts.

Kentucky next looks to in what capacity the individual was acting and if he was functioning as a wrongdoer for his private gain, then neither the principal nor the

bonding agency can be held accountable. As to the latter entity, we have reasoned that the illegal or criminal act was not contemplated under the terms of the bond. *Casey v. Fidelity & Casualty Company of New York*, 278 Ky. 426, 128 S.W.2d 939 (1939). Moreover, the bond is designed to protect the public against official misconduct as opposed to private misconduct. *Massey v. Standard Accident Insurance Company*, 280 Ky. 23, 132 S.W.2d 530 (1939). In order to hold the official and his surety liable, "something else must be shown besides the fact that in doing the acts complained of, the officer claimed to be acting in official capacity." *Shelton v. National Surety Co. of New York*, 235 Ky. 778, 32 S.W.2d 339 (1930). We believe that this cause falls within the purview of the rule of *Commonwealth for the Use and Benefit of Warren County v. Cox's Adm'r.*, 264 Ky. 327, 94 S.W.2d 632, 633 (1936), wherein is found:

> (3) The accepted rule is that without regard to the distinction between acts done by virtue of office and acts done under color of office, the liability upon an official bond arises only upon acts of the officer which pertain to some function or duty which the law imposes upon his office. The sureties to his official bond are not liable for his purely personal act, not done as a part of, or in connection with his official duties, and where he acts without the authority of his office, in doing such act, he is not to be considered an officer, but an individual wrongdoer for which his surety is not liable. (citations omitted)

Spradlin was not employed to forge Lafferty's name to false Certificates of Title. The deputy's act was for his own personal benefit and was undertaken without the knowledge of his principal. Spradlin's official duties did not include certifying that a lien had been released when in fact the lienholder had not so authorized. The deputy clerk should not be considered as an officer or performing an official duty under these circumstances, but rather as an individual wrongdoer acting for his own personal gain. We do not believe that Lafferty assumed responsibility for all of the acts of Spradlin, especially those criminal in nature, and the fact that in so doing, Spradlin employed instrumentalities committed to him for lawful purposes would not create liability upon the parts of the Clerk and his bonding company.

In spite of the efforts of the parties to distinguish some of the cases upon which we rely, we, nevertheless, consider the principles we have set forth above to be governing and accordingly,

The judgment is affirmed.

All concur.