**In re Alan Lee BEAUDOIN, Sarah Ann Beaudoin, Debtors.**

**Bankruptcy No. 91–00027.**

United States Bankruptcy Court, N.D. New York.

April 9, 1993.

Krause & Paupore, P.C., Iron Mountain, MI (Dale M. Krause, of counsel), Leon J. DeBernardis, Utica, NY, for Norway Community Credit Union.

Marc S. Ehrlich, Troy, NY, trustee.

Primo & Centra, Watertown, NY (Terry Kirwan, Jr., of counsel), for debtors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court presently has before it the motion of Norway Community Credit Union ("Norway") seeking relief from the automatic stay imposed by § 362(a) of the Bankruptcy Code ("11 U.S.C. §§ 101–1330) ("Code") pursuant to Code § 362(d) and abandonment of the Trustee's interest in a 1988 Chevrolet "Corsica" automobile ("Vehicle") pursuant to Code § 554(b), and the application of Mark Erlich, Esq., Chapter 7 Trustee ("Trustee"), seeking approval of a proposed sale of the Vehicle to the Debtors herein, Alan and Sarah Beaudoin ("Debtors").

The Court heard oral argument on January 19, 1993, at its regular motion term held in Utica, New York. Thereafter, the parties were provided an opportunity to submit memoranda of law. The matter was submitted for decision on February 10, 1993.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a), 157(b)(1), 157(b)(2)(A), (G), (K), (N) and (O).

### FACTS

On January 3, 1992, the Debtors filed a joint petition under Chapter 7 of the Bankruptcy Code. Debtors' Schedule D, filed with their petition, lists Norway as a party holding a claim in the amount of $5,000.00 which is secured by a purchase money security interest in the Vehicle.

In 1988, while residing in Michigan, the Debtors purchased the Vehicle. The certificate of title for the Vehicle, issued by the Secretary of State of Michigan on or about March 12, 1988 ("Michigan Title"), lists Nor-

way as the "first secured party". Debtors admit that Norway's security interest was perfected under the Michigan Title.

It appears that in June 1991, the Debtors relocated from Michigan to New York. Shortly after the move, on or about July 17, 1991, Debtors applied to the New York Department of Motor Vehicles ("DMV") for a New York registration and certificate of title for the Vehicle. As part of their application the Debtors surrendered the Michigan Title to the DMV. Thereafter, on or about September 26, 1991, the DMV issued a New York Certificate of Title ("New York Title") to the Debtors. The issued certificate, however, bears no notation of Norway's lien.

Prior to receipt of the New York Title, on or about September 9, 1991, Debtors executed a promissory note with Norway that was secured by the Vehicle. It appears that this promissory note was actually a refinancing of the remaining portion of the original sum that Norway had provided the Debtors for the Vehicle's purchase in 1988. It also appears that this loan had been the subject of an earlier refinancing which took place on or about March 14, 1990. Debtors admit that they defaulted on their payment obligation to Norway. Thus, subsequent to commencement of the case, on or about February 9, 1992, the Debtors executed a reaffirmation agreement with respect to the balance due on the loan for the Vehicle.[1] This agreement was not filed with the Clerk of the Court ("Clerk"). By letter to the Clerk dated September 14, 1992, Debtors expressed the intention to rescind their reaffirmation agreement.

On September 24, 1992, the Trustee filed a notice of intention to sell his claimed interest in the Vehicle, consisting of non-exempt equity in the amount of $2,000.00, free and clear of all liens. Trustee consented to adjourn his notice of sale so that Norway's motion for relief from the stay and for abandonment, filed on November 16, 1992, could also be heard at the same time. Both motions were thereafter adjourned by consent of the parties until January 19, 1993.

---

1. The Debtors' payment obligation on a 1987 Ford "Crown Victoria" automobile, also purchased through an installment credit contract

with Norway, was also reaffirmed under this agreement.

Since the question of whether Norway holds a perfected security interest in the Vehicle is an issue preliminary to the determination of both matters, the Court must first determine what effect, if any, does the DMV's failure to note Norway's lien on the New York Title have on Norway's security interest in the Vehicle.

### ARGUMENTS

The Trustee contends that under the applicable provisions of both the New York Vehicle and Traffic Law ("V & T Law") and the New York Uniform Commercial Code ("NYUCC") Norway's security interest in the Vehicle is unperfected because its lien is not listed on the New York Title. Accordingly, Trustee opposes Norway's motion for relief from the stay. In support of his application to sell the Vehicle, Trustee asserts that pursuant to his "strong arm powers" under Code § 544(a), he has priority over Norway's unsecured position and may therefore avoid Norway's unperfected security interest for the benefit of the estate. The Debtors filed a memorandum of law in support of the Trustee's position.

Norway, relying on the facts and circumstances presented here, to wit—that the application for a certificate of title was applied for within the four month statutory time limit for the perfection of security interests in multiple state transactions under NYUCC § 9–103(2); that the application submitted by the Debtors indicated that the Vehicle was subject to one lien; that the Michigan Title was surrendered to the DMV along with Debtors' application for a New York title; and that Norway did not issue the Debtors a release of its lien—contends that the DMV should have issued a certificate of title noting its lien and is thereby obligated to issue a new certificate which does so. Norway seems to be arguing that under these circumstances its security interest was perfected under the New York Title despite the DMV's clerical error in failing to note its lien on the issued certificate. Norway offers no substantiating legal authority for this position.

### DISCUSSION

In New York State the perfection of security interests in motor vehicles is governed both by the NYUCC and by the Uniform Vehicle Certificate of Title Act ("Title Act"), codified at Article 46 of the V & T Law.

New York is one of a majority of states which requires the notation of a security interest in a motor vehicle to appear on the certificate of title to the vehicle as a condition for perfection of the security interest. Article 46 of the V & T Law provides the exclusive procedure for perfecting and giving notice of security interests in motor vehicles in New York. *See* V & T Law § 2123 (McKinney's 1986); *Fitzpatrick v. The Bank of New York*, 118 Misc.2d 771, 461 N.Y.S.2d 703, 705 (Civ.Ct.) (*"Fitzpatrick I"*), *rev'd on other grounds*, 124 Misc.2d 732, 480 N.Y.S.2d 157 (App. Term 2d Dept.1983) (*"Fitzpatrick II"*).

The issue of perfection in vehicles subject to a security interest when brought into New York is addressed by V & T Law § 2118(c) (McKinney's 1986). In pertinent part, that section provides that when a vehicle subject to such an interest is brought into New York, "the validity of the security interest is determined by the law of the jurisdiction where the vehicle was when the security interest attached, subject, [however, to certain restrictions]." *Id.* Relevant to the matter *sub judice* is V & T Law § 2118(c)(2)(A) which provides that where the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the security interest continues perfected in this state if the name of the lienholder is shown on a "currently effective certificate of title issued by that jurisdiction." *Id.* With respect to the instant proceeding, the Michigan Title, which listed Norway as the first secured party on the Vehicle and which was admittedly valid when the Debtors moved to New York, ceased being a "currently effective" certificate of title within the meaning of V & T Law § 2118(c)(2)(A) upon its surrender to the DMV when the Debtors applied for the New York Title and Registration. *See* NYUCC § 9–103(2)(b) (McKinney's 1990). Applying NYUCC § 9–103(2)(b) for purposes of determining the effectiveness of an out of

**30**

state certificate of title does not violate the Title Act's exclusiveness provision since the Title Act does not address the issue nor does it offer any guidelines for determining "the current effectiveness of perfection of a security interest in this type of situation." *In re Howard,* 9 B.R. 957, 960 (N.D.N.Y.1981). That the Michigan Title ceased being a currently effective certificate of title, however, does not conclude the controversy herein, since, as will be discussed *infra,* Norway's security interest in the Vehicle is perfected under the New York Title despite the failure of the DMV to properly note its lien on the face of the certificate.

The Trustee contends that Norway's lien, admittedly valid prior to the move, is not perfected in this state because it was not noted on the New York Title and because Norway failed to avail itself of certain administrative procedures provided under the V & T Law for the correction of clerical errors by the DMV. In support of this contention the Trustee relies principally on *General Motors Acceptance Corp. v. Waligora,* 24 B.R. 905 (W.D.N.Y.1982). In that case, as in the case at bar, the DMV neglected to note the secured creditor's lien on a vehicle on the certificate of title. In affirming the order of the Bankruptcy Court permitting the trustee to avoid the lien asserted by the creditor under Code § 544(a), the District Court held that "a security interest in a motor vehicle subject to Article 46 is not perfected unless the security interest is properly noted on the certificate of title." *Id.* at 907. The District Court based its holding on the availability of various provisions of Article 46 of the V & T Law which enable a lienholder to protect itself from clerical errors of the DMV such as the inadvertent omission from the certificate of title of its lien. *Id.* (citing V & T Law §§ 2107, 2108, 2118, 2119, 2114 and 2127).

*Waligora,* however, has found no support in the published decisions of the courts of New York and has been rejected by at least one other Bankruptcy Court construing New York law. *See In re Microband Companies, Inc.,* 135 B.R. 2, 5 (Bank.S.D.N.Y.1991). More recently, the District Court for the Western District of New York declined to extend *Waligora* when it was again faced

with similar facts. *See Lucas v. Pennbank,* 142 B.R. 68 (W.D.N.Y.1992). There, the District Court noted that a more recent state court interpretation of V & T Law §§ 2108(c) and 2118, *Fitzpatrick v. Bank of New York, supra,* 461 N.Y.S.2d 703, and the plain language of these sections clearly support the proposition that a security interest in a motor vehicle is perfected as soon as the requirements of V & T Law § 2118(b)(1)(A) are satisfied. *Lucas v. Pennbank, supra,* 142 B.R. at 71. Distinguishing the facts in *Lucas* from those in *Waligora,* however, the District Court avoided having to determine the conflict between *Fitzpatrick* and *Waligora. See id.*

In the *Fitzpatrick* case, the purchaser of an automobile at a marshal's sale was issued a certificate of title that failed to note the defendant/bank's prior lien on the vehicle. This purchaser subsequently sold the vehicle to the plaintiff who later brought suit against the defendant/bank for having repossessed the vehicle from him based on the loan default of the original purchaser. *Id.* at 705. In affirming the trial court's interpretation of the V & T Law, the New York appellate court concluded that the defendant/bank had the right to take possession of the vehicle "regardless of the administrative negligence of the [DMV in omitting the defendant/bank's lien]." *Fitzpatrick II, supra,* 480 N.Y.S.2d at 159. That court held that a perfected security interest takes priority over a purchaser of the collateral, even though the purchaser is without knowledge of the lien. *Id.* (citations omitted).

 Upon review of the plain language of V & T Law § 2118(b)(1), this Court finds that a security interest in a motor vehicle is perfected "[b]y the delivery to the commissioner of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee...." *Id.* at § 2118(b)(1)(A). Nothing in the statute conditions perfection on the appearance of the lienholder's name on the issued certificate of title. Rather, by its own terms mere compliance with the prescribed filing requirements, to wit, the delivery of a proper application and supporting documentation, if any, is suf-

ficient to perfect a security interest. *See In re Microband Companies, Inc., supra,* 135 B.R. at 5 (citation omitted); *see also Fitzpatrick I, supra,* 461 N.Y.S.2d at 705–06. Moreover, since a certificate of title is only prima facie evidence of ownership of a vehicle and of the other facts stated in the certificate, V & T Law § 2108(c) (McKinney's 1986); *see also Fitzpatrick I, supra,* 461 N.Y.S.2d at 705–06; *Punis v. Perales,* 112 A.D.2d 236, 491 N.Y.S.2d 451, 453 (2d Dept. 1985), any negligence of the DMV in omitting a lien which was properly acknowledged in the application is not sufficient to constitute a satisfaction or a release of such lien, *see Fitzpatrick I, supra,* 461 N.Y.S.2d at 706 (citing 15 NYCRR § 20.17 and V & T Law § 2121), nor does it alter the priority of the parties' interests in the vehicle. *See Fitzpatrick II, supra,* 480 N.Y.S.2d at 159 (citing NYCRR 20.18).

In the matter *sub judice,* on or about July 17, 1992, the Debtors surrendered the Michigan Title along with their application to the DMV for a New York certificate of title. *See* Norway Reply Memorandum to Debtors' Response, at Exhibit A. Presumably, the required fee was paid since a certificate of title was issued by the DMV on or about September 26, 1992. Since all the applicable steps required to perfect a lien under V & T Law § 2118(b)(1)(A) were satisfied here, Norway's security interest was perfected, *see* NYUCC § 9–303(1), prior to the commencement of the case.

Code § 544(a)(1), one of the "strong arm" provisions of the Code, confers upon the trustee the rights of a "hypothetical judicial lien creditor" of the debtor at the time when the case was commenced, whether or not such a creditor actually existed. *See In re Minton Group, Inc.,* 27 B.R. 385, 391 (Bankr.S.D.N.Y.1983), *aff'd,* 46 B.R. 222 (S.D.N.Y.1985). While the trustee's status is conferred by Code § 544(a)(1), the trustee's rights as to third parties are determined in accordance with state law. *In re Cirasuolo,* 48 B.R. 447, 449–50 (Bankr.N.D.N.Y.1985) (citations omitted).

Under the circumstances present here, the Trustee is unable to avoid Norway's

lien pursuant to Code § 544(a)(1) since as of the commencement of the case the Trustee, as a hypothetical judicial lien creditor, NYUCC § 9–301(3) (McKinney's 1990) (defining "lien creditor" as "a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes . . . a trustee in bankruptcy from the date of the filing of the petition. . . ."), would have acquired no rights in the Vehicle superior to Norway's perfected security interest under the New York Title. *See* V & T Law § 2118(a); *Fitzpatrick II, supra,* 480 N.Y.S.2d at 159. Accordingly, the Court must deny Trustee's application to sell the Vehicle to the Debtors free and clear of Norway's lien.

Thus, having reached the conclusion that Norway holds a perfected security interest in the Vehicle, which the Trustee would be unable to defeat under Code § 544(a)(1), the Court turns to Norway's motion seeking abandonment of the Trustee's interest in the Vehicle pursuant to Code § 554(b) and for relief from the automatic stay pursuant to Code § 362(d).

Code § 554(b) provides that on request of a party in interest and after notice and a hearing, "the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." *Id.* Accordingly, abandonment may be ordered where the bankruptcy court finds either that: 1) the property is burdensome to the estate; or 2) the property is both of inconsequential value *and* inconsequential benefit to the estate. *See In re K.C. Machine & Tool Co.,* 816 F.2d 238, 245 (6th Cir.1987).

With respect to the latter requirements of Code § 554(b), numerous courts have recognized that " 'where the estate has no equity in a particular property, and the estate is to be liquidated, abandonment will virtually always be appropriate because no unsecured creditor could benefit from its administration.' " *In re Ayers,* 137 B.R. 397, 401 (Bankr.D.Mont.1992) (quoting *In re Paolella,* 79 B.R. 607, 609–10 (Bankr.E.D.Pa. 1987)). Thus, in a liquidation case, proof that

the estate lacks equity in the property sets forth a prima facie case that the property is of inconsequential value and benefit to the estate. *In re Paolella, supra,* 79 B.R. at 610. The movant's prima facie case can be rebutted, *e.g.,* by proof that the secured creditor's liens can be subordinated to an interest of the trustee, or possibly by establishing that some other form of value or benefit would accrue to the estate by retention of the property. *See id.* (citations omitted).

■■■■■ Here, Norway contends that there is no equity in the Vehicle. Since this is a liquidation case, it is appropriate to look to the liquidation value of the Vehicle to determine whether equity does in fact exist. *See Matter of Karl A. Neise, Inc.,* 31 B.R. 409, 412 (Bankr.S.D.Fla.1983). The liquidation value of an automobile is its wholesale value. *See In re Thomas Parker Enterprises, Inc.,* 10 B.R. 783, 788–89 (Bankr.D.Conn. 1981); *see also In re Mitchell,* 954 F.2d 557, 560–61 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992). According to the NADA Official Used Car Guide, October 1992 edition, submitted by the Trustee in support of his notice of sale to the Debtors, the wholesale value of the Vehicle, estimated on the high side, is approximately $3,750.00.[2] Given the $5,000.00 secured debt on the Vehicle listed in Debtors' Schedule D, it is clear that there is no equity in the Vehicle which would be of benefit to the estate. Therefore, since there is no equity in the Vehicle and Norway's interest therein is superior to that of the Trustee's, *see* Discussion *supra,* the Trustee is directed to abandon his interest in the Vehicle pursuant to Code § 554(b). *See In re Brannan,* 5 B.R. 505, 506 (D.V.I.1980) (citation omitted).

■■■■■ Norway next seeks relief from the automatic stay. In the matter *sub judice,* however, the request for such relief is unnecessary since the automatic stay has already terminated by operation of law pursuant to Code § 362(c)(1) and (2). In the first instance, the automatic stay of actions against property of the estate ceases being applicable to property once it has been abandoned by the trustee. Code § 362(c)(1). While ordinarily such property would be protected by the automatic stay of actions against property of the debtor provided by Code § 362(a)(5), the protection afforded by that section is not applicable here by reason of the Debtors having already been granted their discharge. Code § 362(c)(2). Since the automatic stay with respect to the Vehicle has already terminated by operation of law, it is not necessary for the Court to give further consideration to Norway's request for such relief under Code § 362(d).

Based on the foregoing conclusions it is hereby

**ORDERED** that Trustee's application to sell the Vehicle to the Debtors free and clear of Norway's lien for an amount equal to the non-exempt equity in the Vehicle is denied, and it is further

**ORDERED** that the Trustee shall abandon his interest in the Vehicle pursuant to Code § 554(b), and it is finally

**ORDERED** that the automatic stay imposed by Code § 362(a) is terminated by operation of Code § 362(c)(1) and (2).

---

**2.** This value was calculated by taking the published base wholesale price for a 1988 Corsica four door sedan of $3,200.00 and then adding to it the published value of each available option and then taking no deductions for high mileage or options that the Vehicle may not be equipped with.