**In re Richard A. & Terry M. ABRUZZESE.**

**Kevin R. Huennekens, Trustee, Plaintiff,**

v.

**Richard A. Abruzzese, Terry M. Abruzzese, and Mercury Finance Company of Virginia, Defendants.**

**Bankruptcy No. 98–38447–T. Adversary No. 99–3021–T.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

July 29, 1999.

---

to object to Great Lakes' proofs of claim and could not have waived their right to rely on the provisions of section 502(b)(2).

Louis S. Nuzzo, Hunzeker & Lyon, Fredericksburg, VA, for Debtors.

Blackwell N. Shelley, Jr., Butler, Macon, Williams & Pantel, Richmond, VA, Counsel to Trustee.

Kevin R. Huennekens, Richmond, VA, Chapter 7 Trustee.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

On June 14, 1999, the court held trial on the trustee's complaint to determine the validity, extent and priority of a lien claimed by Mercury Finance Company of Virginia (Mercury Finance) on the debtors' 1995 Pontiac van. The trustee's position is that the lien constitutes an avoidable preference entitling the trustee to priority. Although named as defendants, the debtors took no part in the trial.

For reasons stated in the opinion, the court finds that Mercury Finance's security interest attached more than 90 days before the debtors filed bankruptcy and is therefore not subject to the trustee's preference claim.

### Findings of Fact

The debtors purchased a 1995 Pontiac van from Barnett Pontiac Buick GMC Izuzu (Barnett) on June 26, 1998. The debtors financed the purchase in part through a retail installment contract with Barnett. Simultaneously, Barnett assigned the contract to Mercury Finance. The debtors took possession of the van on the date of sale, June 26, 1998.

Barnett filed an application for title with the Virginia Department of Motor Vehicles (DMV) on July 22, 1998.[1] The application included the information that Mercury Finance would hold a lien on the title. DMV did not issue the debtors' title on the van

until October 15, 1998. DMV's delay in issuing the title was due to the debtors' failure to pay past debts due to DMV.

Debtors filed their chapter 7 petition on November 13, 1998.

### The Trustee's Complaint

The trustee seeks to avoid the security interest of Mercury Finance in the debtors' motor vehicle as a preferential transfer. An avoidable preferential transfer occurs where there is a "transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

. . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The only element of section 547(b) which is in dispute is whether the debtors' transfer of the security interest occurred within the 90 days before the date of the bankruptcy petition. The trustee contends that Mercury Finance's security interest in the

---

1. The court bases this finding on the undisputed testimony of John Green, the sales manager of Barnett. He stated that automobile dealers do not receive verification that a title application has been submitted until the new title is issued by DMV. Mr. Green, however, testified that he had a receipt which showed that an application fee was paid for the debtors' title registration on July 22, 1998.

Additionally, printouts from the DMV show that on July 22, 1998, DMV processed a "Plate Pull/Transfer Request" to transfer the debtors' tags from their old car to the van. According to Mr. Green, a "Plate Pull" transaction cannot be commenced until the new car title is registered in the new owners' name.

van was not perfected until DMV issued a certificate of title indicating Mercury Finance's security interest on October 15, 1998. In contrast, Mercury Finance asserts that its security interest was perfected outside the 90 day period on July 22, 1998, when the application for certificate of title was submitted to DMV.

### Conclusions of Law

■ Whether and when a party has perfected its security interest is governed by state law.[2] In this case the court must decide whether under Virginia law Mercury Finance's security interest in debtors' motor vehicle was perfected on the date of application to DMV or the date the certificate of title was issued by DMV. The debtors filed their bankruptcy case 114 days after the creditor's application to DMV but only 29 days after the certificate of title was issued. Thus, the trustee can prevail in this preference action only if under Virginia law the date of perfection was the date DMV issued the title. *See* 11 U.S.C. § 547(b). The precise timing issue before the court appears to be one of first impression under Virginia law.

■ Virginia law requires DMV to note applied for security interests in a motor vehicle on the face of the title to the vehicle. *See* Va.Code § 46.2–636; *see also GMAC v. Smith*, 377 F.2d 271, 272–73 (4th Cir.1967); *In re Johnson*, 179 B.R. 800, 804 (Bankr.E.D.Va.1995); *Lubman v. J.B. Eurell, Co. (In re Fregosi)*, 23 B.R. 641, 643 (Bankr.E.D.Va.1982). A security interest which is not displayed on the certificate of title is not perfected and is thus unenforceable against third parties. *See Richlands Nat'l Bank v. Smith*, 34 B.R. 749, 752 (W.D.Va.1983); *In re Fregosi*, 23 B.R. at 643; *Bain v. Commonwealth*, 215 Va. 89, 205 S.E.2d 641, 643 (1974). When a certificate of title is issued it provides adequate notice to all creditors and purchasers of the security interest, making any further recordation of the lien on the motor vehicle unnecessary. *See* Va.Code § 46.2–638;[3] *see also GMAC*, 377 F.2d at 272–73.

■ Virginia Code § 46.2–638 does not address whether or when a security interest is perfected by a creditor prior to *issuance* of title and is thus ambiguous as to the time of perfection. There are instances, however, when the code is specific regarding the date to be used for perfec-

---

**2.** Normally under Virginia law a security interest relates back to the date of purchase if the *creditor's application* for title is made to DMV within 30 days of purchase. *See* Va. Code § 46.2–639 (Michie 1998)(emphasis added); *see also GMAC v. Smith*, 377 F.2d 271, 273 (4th Cir.1967) (discussing Va.Code § 46.1–71). In this case the court concludes that the application to DMV to register the security interest of Mercury Finance on the title was filed on July 22, 1998, 26 days after the debtors took possession of the van. Thus, under § 46.2–639, Mercury Finance's security interest would relate back and be perfected as of the date of purchase, June 26, 1998.

In the recent case of *Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 212–13, 118 S.Ct. 651, 652, 139 L.Ed.2d 571 (1998), the United States Supreme Court ruled, for purposes of 11 U.S.C. § 547, that a security interest perfected within a state's 30 day relation back period did not relate back to the date of purchase under the bankruptcy code because it was not perfected within the 20 day time

limit established by section 547(c)(3)(B). As a result, the creditor's lien was avoided.

Thus under *Fink*, Mercury Finance's security interest in the van could not have been perfected before July 22, 1998, because the application was not filed within the 20 day time period prescribed by section 547(c)(3)(B). The trustee has argued that this circumstance supports his position in this case. However, because the court finds the Mercury Finance's lien was perfected more than 90 days prior to bankruptcy, section 547(c)(3)(B) has no bearing in this case.

**3.** Code § 46.2–638 states in part:
A certificate of title, when issued by the Department showing a security interest, shall be adequate notice to the Commonwealth, creditors, and purchasers that a security interest in the motor vehicle exists and the recording or filing of such creation or reservation of a security interest in the county or city wherein the purchaser or debtor resides or elsewhere is not necessary and shall not be required....

tion purposes, and at those points the statutes use the date of application. For example, when a creditor wishes to relate back its perfected security interest to the date of possession, an application for a certificate of title must be made within 30 days. *See* Va.Code § 46.2–639; *see also GMAC*, 377 F.2d at 273. Similarly, security interests created after a title is issued are determined perfected on the date an ultimately successful application is submitted to DMV. *See* Va.Code § 46.2–637. At no point does the Virginia Code rely on the date of issuance of a certificate of title for perfection purposes.

 Based upon the above analysis, the court finds that July 22, 1998, the date the automobile dealer filed the application for title reflecting Mercury Finance's lien, was the date upon which the security interest was perfected.[4]

There is case law that might be said to contradict the court's conclusion. The cases considering perfection of motor vehicle security interests in Virginia uniformly have relied on the language of § 46.2–638 that a security interest must be recorded on the certificate of title in order to be perfected. *See, e.g., Richlands Nat'l Bank*, 34 B.R. at 752; *In re Darrington*, 251 B.R. 808 (Bankr.E.D.Va.1999); *General Elec. Capital Corp. v. Spring Grove Transp., Inc. (In re Spring Grove Transp., Inc.)*, 202 B.R. 862, 864–65 (Bankr.E.D.Va. 1996); *In re Johnson*, 179 B.R. at 804; *In re Fregosi*, 23 B.R. at 643; *Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.*, 256 Va. 243, 506 S.E.2d 14, 17

(1998); *Bain*, 205 S.E.2d at 641. These decisions would appear to lead to the conclusion, at least in cases where a title has been issued, that a security interest is perfected only when evidenced on the title certificate. As indicated earlier, this court has found no decisions interpreting Virginia law that have addressed the precise timing of perfection issue raised in this case. In most of the reported decisions in which a court has found a creditor unsecured because of the lack of designation of a security interest on the title, the creditor or responsible party had not submitted an application for a certificate of title or had not done so in a timely manner.

Most recently the Virginia Supreme Court has addressed the application of the titling statutes and perfection of a secured interest in *Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.*, 256 Va. 243, 506 S.E.2d 14. In that case a vehicle owner applied to DMV for a duplicate certificate of title and fraudulently represented that Toyota's security interest had been released. *See id.* at 15. Consequently, DMV issued a new title and released Toyota's security interest on the title. *See id.* Subsequently, the debtor transferred the vehicle to a bona fide purchaser for value. *See id.* Recognizing the usual rule that a security interest must appear in the face of the title, the Virginia Supreme Court held that where there are two innocent parties, the bona fide purchaser for value was entitled to take free of the unrecorded security interest. *See id.* at 16. The court reasoned that a purchaser for value must be able to rely on the certifi-

---

4. The court's conclusion that the application date is the appropriate date is further supported by analogy to Va.Code § 46.2–628 for transfer of title. According to Va.Code § 46.2–628 an owner transfers title by "fully and correctly endors[ing] the assignment and warranty of title on the certificate of title of the motor vehicle ... with a statement of all security interests on it, and shall deliver the certificate to the purchaser or transferee at the time of delivering the motor vehicle." Cases under the Virginia law have interpreted the transfer of title provisions to hold that once the transferor has completed the statuto-

ry duties of assignment and delivery the sale is complete. *See, e.g., Wicker v. National Sur. Corp.*, 330 F.2d 1009, 1012 (4th Cir.1964). Thus, the transferee's failure to timely file the documents with DMV as required by law does not affect the completion of sale. *See id.* A similar argument can be made for perfection. Once the dealer/transferor has submitted an application to DMV, all actions have been completed to perfect the security interest other than the issuance by DMV; the final action of issuance by DMV is out of the control of the creditor.

cate of title without resorting to outside investigation. *See id.* at 15–16.

This court does not believe the existing case law provides an adequate answer for the instant case. There are two innocent parties here, Mercury Finance and the debtors' trustee in bankruptcy. In *C.L. Hyman Auto Wholesale, Inc.*, the Virginia Supreme Court recognized that there would be instances of conflicting claims to motor vehicle titles between innocent parties and concluded that a bona fide purchaser should prevail over an undisclosed security interest. *See id.* The equities there were plainly with the innocent purchaser who relied on the title. *See id.* However, the trustee here is not a bona fide purchaser with the equities in his favor. In fact there could have been no bona fide purchaser under the circumstances of this case. There never existed a certificate of title indicating an ownership interest of the debtors which did not display Mercury Finance's security interest. The only title issued by DMV to the debtors was the title issued on October 15, 1998. Thus, no creditor or purchaser could have seen a certificate of title which did not reflect that security interest, and there could have been no transfer of title to a bona fide purchaser.

The court's ruling under the unique circumstances of this case that Mercury Finance perfected its security interest when the application was filed with DMV is also supported on policy grounds which are inferred from DMV's function under the motor vehicle laws. The application date provides a date specific for dealers and financial institutions to measure perfection. Although this case may be a drastic example, in which the certificate of title was issued almost three months after the application was submitted, it may not be uncommon for some delay to ensue between the application and issue date for a certificate of title. To require a creditor to rely on the date title is issued would cause the creditor to unnecessarily assume the risks of delay created by bureaucracy and, as in

this case, defaults of the debtor. Rather, once a creditor has taken all actions within the creditor's power to perfect its security interest, including submission of the application to DMV, the creditor should be able to assume that its security interest will not ordinarily be delayed by forces beyond its control.

Because the court finds that Mercury Finance perfected its security interest on July 22, 1998, more than 90 days before the debtors filed for bankruptcy on November 13, 1998, the creditor has not been preferred pursuant to 11 U.S.C. § 547. The court will order judgment for Mercury Finance and dismiss the trustee's complaint.