**In re James Ralph WUERZBERGER, Debtor.**

**John G. Leake, Trustee, Plaintiff,**

v.

**Oakwood Acceptance Corporation, Defendant.**

**Bankruptcy No. 5–01–00232.**
**Adversary No. 5–01–00026A.**

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 3, 2002.

J. Forester Taylor, Staunton, VA, for debtor.

John G. Leake, Harrisonburg, VA, trustee.

Dale Davenport, Harrisonburg, VA, for trustee.

Thomas Domonoske, Harrisonburg, VA, special counsel for trustee.

Boyce Brannock, Staunton, VA, Peter Partee, Richmond, VA, Richard Maxwell,

Charlottesville, VA, for Oakwood Acceptance Corporation.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

Before the court is a motion for summary judgment to determine the lien interest in a mobile home of a party who admittedly assigned all of its interest in a lien to a securitization trust, but who also claims to have retained some modicum of legal title through the retention of the contractual right to service the loan and by the party's name remaining noted as a lienholder on the certificate of title.

## BACKGROUND

Affiliates of Oakwood Acceptance Corporation (hereinafter Oakwood) make and sell mobile and manufactured homes. Financing is offered to the qualified buyers of the mobile homes. Such buyers sign a retail installment contract and grant a security interest in the mobile home. The affiliates assign the retail installment contracts and liens to Oakwood. The retail installment contracts are secured by noting a lien on the certificate of title of the mobile home in favor of Oakwood. Oakwood then assigns these contracts through a special purpose subsidiary to a securitization trust known as Oakwood Acceptance Corporation REMIC Trust 1994–1 Asset–Backed REMIC Trustee Certificates (hereinafter Trust), which in turn issues asset-backed securities to the public. Oakwood remains listed as the lienholder on the certificates of title after the

assignment to the Trust and continues to act as the servicer of the contracts.[1] At no time are the certificates of title amended to list either the securitization trust or its trustee as the lienholder.

On February 14, 2001, the above-styled debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. The debtor scheduled a debt owed to Oakwood in the amount of $19,215.02. The debt was listed as being secured by an Oakwood mobile home. On April 9, 2001, John G. Leake (hereinafter Trustee) commenced this adversary proceeding to determine the validity of Oakwood's lien. The Trustee alleged that Oakwood assigned its interest in the retail installment contract and lien to a securitization trust and asserted that Oakwood's interest in the lien is challengeable in bankruptcy by using the statutory strong arms powers granted a trustee in bankruptcy by 11 U.S.C. § 544 of the Bankruptcy Code.

On May 9, 2001, Oakwood filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and (b)(7),[2] claiming that the Trustee's complaint failed to state a claim upon which relief can be granted and that the Trustee failed to join a necessary party. With respect to Rule 12(b)(6), Oakwood admitted that it transferred all of its interest in the retail installment contract to the Trust and retained only the contractual right to service the retail installment contract on behalf of the Trust. As to Rule 12(b)(7), Oakwood, argued that the Trust was the real party in interest in the lien avoidance action since it is the holder of the lien on the debtor's mobile home.

---

1. Neither party provided the court with documentation regarding the assignment to the Trust or the contractual right to service the contract; therefore, the exact scope of the assignment and servicing contract and the precise wording used therein are not available for this court's review. The court is left to rely on the allegations and arguments

made by the parties both orally and in their filed pleadings.

2. Rule 12(b) of the Federal Rules of Civil Procedure is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012.

The Trustee responded that the adversary proceeding was commenced only to determine Oakwood's interest in the lien, not any other party's interest. The Trustee further argued that allegations in Oakwood's motion to dismiss touched on the ultimate issue involved in the adversary proceeding. Specifically, the Trustee alleged that since Oakwood admitted that it transferred "all of its interest" and that the Trust was that actual holder of the lien, then Oakwood has no interest in the lien. Mot. to Dismiss ¶ 2 *cited in* Opp'n to Oakwood Acceptance Corporation's Mot. to Dismiss ¶¶ 3–6. After a hearing on the matter, the court denied the motion to dismiss, holding that a claim was stated and that the Trust was not a necessary party to this action since only Oakwood's interest in the lien was being adjudicated.

On June 13, 2001, the Trustee filed a motion for summary judgment and a hearing on the motion was held on August 23, 2001. The only relief the trustee requested is a determination that Oakwood does not have a lien interest in the mobile home. According to the Trustee, since Oakwood admittedly assigned all of its interest in the lien, the court can determine as a matter of law that Oakwood has no lien interest in the mobile home at issue in this case.

In response to the motion for summary judgment, solely by way of memorandum and by oral argument, Oakwood qualified its early position that it transferred "all of its interest" to mean that it assigned only the beneficial ownership interest in the retail installment contract and the lien, but that it retained the legal ownership. The Trust, according to Oakwood, is the current beneficial owner of the contract and lien, and Oakwood is the legal owner, i.e., Oakwood retained a legal interest in the debtor's mobile home. In support of this position, Oakwood points out that it still

remains noted as the holder of the lien on the certificate of title. Oakwood also argues that its contractual right to service the contract is indicative of its legal interest in the lien. Oakwood relies on these two positions to survive the summary judgment motion.

Oakwood also argues that the division of legal and equitable interest is contemplated and condoned by 11 U.S.C. § 541(d). Section 541 of the Bankruptcy Code states:

> (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Oakwood contends that § 541(d) expressly acknowledges the typical secondary mortgage market transaction wherein the seller transfers the equitable ownership interest in the mortgage, but retains the legal title to the mortgage for servicing purposes even though the transfer of the mortgage is not recorded under state recordation statutes. Since Oakwood executed and delivered an assignment of the contract and lien, but it did not "record" the transfer of the lien to the Trust by amending the certificate of title, Oakwood's argument is that the assignment to the Trust is analogous to a typical secondary mortgage market transaction.

The parties do not dispute that Oakwood may have held a perfected security interest in the mobile home prior to the assignment, nor do they dispute that Oakwood

assigned the security interest to the Trust. The question for decision is what effect did the assignment of the security interest by Oakwood to the Trust have on Oakwood's status as a lien creditor when bankruptcy arrived and the trustee as a hypothetical lien creditor attacked Oakwood's priority using 11 U.S.C. § 544.[3]

## ANALYSIS

Federal Rule of Civil Procedure 56(c) provides the following standard for determining a motion for summary judgment: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[4] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The motion must be considered in the light most favorable to the nonmoving party. *Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 361 (4th Cir.1994).

In this case, the Trustee is the moving party who must make an initial showing that he is entitled to judgment. Also, because he bears the burden of persuasion at trial the trustee must sustain this burden in his motion as well as demonstrating the absence of a genuine dispute. *Celotex*,

477 U.S. at 331–32, 106 S.Ct. 2548. In short, the trustee must show he would be entitled to a directed verdict at trial. *See United States v. One 107.9 Acre Parcel of Land Located in Warren Township, Bradford County, Pa.*, 898 F.2d 396, 398 (3d Cir.1990). Once the movant makes a properly supported motion, the burden shifts to the nonmovant to demonstrate the existence of a genuine dispute. As stated in Rule 56(e), the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

When analyzed in this framework it is clear that in the pleadings Oakwood admits it transferred its interest in the security agreement (the security interest) to the Trust. The Trustee's position is simply, "you cannot have a security interest if you have transferred it to the Trust." The conclusion reached by the Trustee is that on the petition date Oakwood had no interest, much less lien status, and the strong arm power of 11 U.S.C. § 544 gives the Trustee a priority lien claim. Furthermore, it is well-settled that a lien creditor enjoys priority over a party holding an unperfected security interest, and especially over a party who holds no legal interest.

---

**3.** In relevant part 11 U.S.C. § 544(a) states that:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have

obtained a judicial lien, whether or not such a creditor exists; . . . .

*See* S.Rep. No. 989, 95th Cong., 2d Sess. 85, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5871 (stating that § 544(a) gives the trustee the rights of a creditor in a simple contract with a judicial lien on the property of the debtor as of the date of the petition).

**4.** Federal Rule of Civil Procedure 56(c) is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056.

*See* Va.Code § 8.9A–317.[5] A lien creditor includes a trustee in bankruptcy. *See In re Johnson,* 179 B.R. 800 (Bankr.E.D.Va. 1995); *In re Yale Mining Corp.,* 39 B.R. 201 (Bankr.W.D.Va.1984) (stating trustee takes priority over secured party with unperfected security interest). For purposes of establishing his burden for the motion for summary judgment, the Trustee has come forward with an initial showing of entitlement to a judgment, i.e., there is no dispute that Oakwood transferred its interest to the Trust.

However, in its memorandum and oral argument Oakwood backpedals and asserts that there is a specific fact showing a genuine issue for trial, i.e., the fact that Oakwood's name remains noted as the lienholder on the title at the date of the petition shows retention of some "bare legal title" sufficient to defeat the Trustee's motion. In order to test Oakwood's position, it is necessary to analyze Virginia's law governing security interests.

 In Virginia a security interest must attach and be perfected to be enforceable against the debtor and third parties. *See In re Johnson,* 179 B.R. 800, 803 (Bankr.E.D.Va.1995) (citing Va.Code § 8.9A–203 and discussing security interests under Virginia law). A security interest attaches when the debtor signs a security agreement describing the collateral, when value has been given, and when the debtor has rights in the collateral. *See* Va.Code § 8.9A–203. Once attached, the security interest is enforceable against the debtor. To be enforceable against third parties, however, the security interest must be perfected. *See Johnson,* 179 B.R. at 804. The method of perfection varies according to the type of collateral covered by the security interest. *See* Va.Code §§ 8.9A–301 through –306 (setting forth the requirements for perfection of security interests in different types of collateral). Virginia is a title certificate state; hence, the perfection process in Virginia for house trailers and mobile homes requires a notation of the lien on the certificate of title. *See* Va.Code § 8.9A–303; Va.Code § 46.2–636.[6] *See also In re Smith,* 311 F.Supp. 900, 901 (W.D.Va.1970) (stating Virginia is a title certificate state and liens must be noted on the certificate of title).

 The statute requiring that a lien be noted on a certificate of title was enacted to provide a simple means of ascertaining liens against motor vehicles by designating one place to record liens. *See General Credit v. Winchester, Inc.,* 196 Va. 711, 717–18, 85 S.E.2d 201, 204 (1955). The notation on the certificate of title is deemed to provide adequate notice to the Commonwealth, creditors and purchasers that a lien on the property exists. Va. Code § 46.2–638.[7] *See General Credit, Inc.*

---

**5.** In relevant part, Va.Code § 8.9A–317 states that a "security interest or agricultural lien is subordinate to the rights of . . . a person that becomes a lien creditor before . . . the security interest or agricultural lien is perfected."

**6.** The statute cited as requiring a notation of the security interest on the certificate of title is Va.Code § 46.2–636, which states the following:

> When the Department receives an application for a certificate of title to a motor vehicle, trailer, or semitrailer showing security interests on the motor vehicle, trailer,

or semitrailer, the certificate of title issued by the Department to the owner of the vehicle shall show all security interests disclosed by the application. All security interests shown on the certificate of title shall be shown in the order of their priority according to the information contained in the application.

**7.** In pertinent part, Va.Code § 46.2–638 states that: "[a] certificate of title, when issued by the Department showing a security interest, shall be adequate notice to the Commonwealth, creditors, and purchasers that a security interest in the motor vehicle exists . . . ."

*v. Winchester, Inc.*, 196 Va. 711, 717–18, 85 S.E.2d 201, 204 (1955); *C.I.T. Corp. v. Guy*, 170 Va. 16, 25, 195 S.E. 659, 662 (1938) (stating certificates of title give notice to creditors and purchasers); *Bain v. Commonwealth*, 215 Va. 89, 91, 205 S.E.2d 641, 643 (1974) (stating that "the purpose of this statute is to provide a simple means for third party purchasers or creditors to ascertain the existence of a prior security interest"). The fact that all the world is on notice that there is a prior security interest does not permit a finding that the notation evidencing the existence of a security interest in Oakwood is sufficient to defeat the Trustee's motion. The fact remains that Oakwood transferred, prepetition, the security interest which would entitle it to note lien status in its favor on the title. There is no legal basis upon which Oakwood may credibly contend that is has bare legal title to the security interest by virtue of its name remaining on the certificate of title, especially in light of its admission that it assigned all of its interest to the Trust.[8] As a matter of law, this court finds that Oakwood does not have an interest in the lien and a number of cases support this finding.

The Bankruptcy Court for the Eastern District of Virginia held that a creditor's security interest in a van was perfected when the secured party filed an application for title, and not when the Department of Motor Vehicles (DMV) issued the certificate of title reflecting the security interest. *In re Abruzzese*, 252 B.R. 341, 346 (Bankr. E.D.Va.1999). In *Abruzzese*, the trustee in bankruptcy sought to avoid the security interest of Mercury Finance in the debtor's van as a preferential transfer since the DMV issued the certificate of title bearing the security interest within 90 days of the filing of the debtor's bankruptcy petition.[9] *Abruzzese*, 252 B.R. at 343. Mercury Finance argued that its security interest was perfected outside of the ninety day period when it applied for the certificate of title, and not when the title was issued. *Id.* at 344. The debtors filed their petition 114 days after Mercury Finance's application was delivered to DMV, but only 29 days after the certificate of title was issued. *Id.*

The bankruptcy court agreed with Mercury Finance. *Id.* at 346. The court recognized that Virginia requires a security interest to be displayed on the certificate of title for it to be enforceable against third parties and that when a certificate of title is issued it provides notice to all creditors and purchasers of the security interest. *See id.* (citing Va.Code §§ 46.2–636 & –638). The court opined, however, that the Virginia Code and the reported cases interpreting the code did not address when a security interest is perfected by a creditor prior to the issuance of title. Based on its analysis of the Virginia Code and case law, the *Abruzzese* court held that Mercury Finance became perfected when it completed the application process.

Although *Abruzzese* is not determinative of the matter here, the case is illustrative of the limited role certificates of title play under Virginia law. In *Abruzzese*, Mercury Finance had a perfected security interest eighty-five days *before* a certificate of

---

**8.** The court notes that this position continued to oral argument. *See* Transcript of Hearing dated August 23, 2001 at 9, *Leake v. Oakwood Acceptance Corp. (In re Wuerzberger)*, Case No. 5-01-00232, Adv. No. 5-01-00026 (Bankr. W.D.Va.2002) ("[W]e do not dispute that Oakwood has executed an assignment that says that all right, title, and interest into and under

these retail installment sales contracts are being assigned ... to a trust....").

**9.** *See* 11 U.S.C. § 547(b) (making avoidable transfers of interests in the debtor's property that occur within ninety days of the filing of a bankruptcy petition).

title existed bearing the party's security interest (emphasis added). The case implicitly recognized that the notations on a certificate of title, e.g., the perfected security interest of Mercury Finance, may not be dispositive of the legal rights of the parties.

The Fourth Circuit held in the case *In re Lowry* that a certificate of title bearing an erroneous engine number, but that referred to a conditional sales contract which correctly described the engine, serial numbers, location and name of the person in possession, was sufficient to maintain a lien against a trustee in bankruptcy. *In re Lowry*, 40 F.2d 321 (4th Cir.1930). This case, too, is illustrative of the notice function served by the notation of a lien on the certificate of title. The court did not rely on the information on the certificate of title as conclusive proof, rather the court looked to an extraneous document that set forth the proper facts in the case. Indeed, a diligent search precipitated by the notice given from the certificate of title revealed the actual facts that allowed the lien interest to withstand the trustee's attack.

See also *Staunton Industrial Loan Corp. v. Wilson*, 190 F.2d 706 (4th Cir. 1951) for a case which recognized the limited purpose of the statute requiring liens to be noted on the certificate of title. The Fourth Circuit upheld the validity of an oral chattel mortgage on a motor vehicle. In doing so the court stated that the notice provided by the lien displayed on the certificate of title was not intended to "invalidate unrecorded transactions in motor vehicles other than sales as between the immediate parties to the transaction." *Staunton Industrial Loan Corp.*, 190 F.2d at 709. In doing so the court recognized that the Virginia statute requiring liens to

be noted on the certificate of title is a notice statute, and the use of the words "adequate notice" strongly supports this interpretation. *Id.* at 709. Here, again, the court refused to be bound by the presence or absence of information on the certificate of title. In other words, the court looked at the substance of the arrangement between the parties and not at the formalities noted on the certificate of title. *Cf. Buckeye Union Cas. Co. v. Robertson*, 206 Va. 863, 867, 147 S.E.2d 94, 97 (1966) (discussing ownership of a vehicle for insurance purposes and stating that a "title certificate [is] only prima facie evidence of ownership, and that the presumption of ownership evidenced by the certificate of title may be overcome by evidence that the true owner of the vehicle is a person other than the one in whose name the vehicle is registered"); *Scott v. State Farm Mut. Auto. Ins. Co.*, 202 Va. 579, 582, 118 S.E.2d 519, 522 (1961) (same); *United States Cas. Co. v. Bain*, 191 Va. 717, 720, 62 S.E.2d 814, 815 (1951) (same).

Cases outside of Virginia have likewise acknowledged the limited purpose served by a notation on a certificate of title. For example, the Bankruptcy Appellate Panel for the Eighth Circuit recognized that the mere notation on a certificate of title of an entity's security interest is not determinative of underlying facts. In *In re Calvert*, 227 B.R. 153 (8th Cir. BAP 1998), the court held that there was insufficient evidence to find that a security interest in a truck was given by the debtor to his parents. The trustee in *Calvert* attempted to recover an alleged preferential payment made by the debtor to an unsecured creditor. The alleged transferee argued that the debtor's parents loaned earmarked money to the debtor to make the payment; thus, the earmarking doctrine applied.[10]

---

**10.** The earmarking doctrine is a court-made equitable doctrine that is widely recognized

as a valid defense to a preference action. When a new lender gives a loan to enable a

To prevail against this defense, the trustee bore the onus of proving that the debtor gave a valid security interest to his parents for a loan which he used to pay a unsecured settlement to the alleged transferee. In support of its contention the trustee argued that the notation of the debtor's father as the lienholder on the certificate of title was evidence that the a security interest was given by the debtor.

The court narrowed the issue to "whether the lien notation on the certificate of title (which constitutes perfection of the security interest) can create a presumption that a written security agreement exists." *Calvert*, 227 B.R. at 158. The bankruptcy court held that the so-called "official acts presumption" applied, creating a presumption that a security agreement was simultaneously presented to the clerk when the application for a certificate of title was submitted. *Id.* at 158.

The Bankruptcy Appellate Panel rejected the application of the official acts presumption argument on two grounds. First, the presumption was incorrectly applied because it was not being employed to protect public officials when their acts are attacked, such as the acts of the county clerk who issued the certificate of title. Second, the *Calvert* court rejected the application of the presumption, assuming it was invoked correctly, because the controversy did not involve a collateral attack on the validity of the lien. Chief Judge Koger, writing for the Bankruptcy Appellate Panel, stated that rather than determining the validity of the lien, the issue addressed by the court was whether a security interest existed in the first place. This latter question needed to be answered before the

so-called official act presumption could be applied.

The *Calvert* court looked at the evidence proffered in support of the contention that a security agreement was extant. The trustee offered the notation on the certificate of title in support of this contention and the Eighth Circuit rejected such as insufficient to prove the existence of a security agreement regarding the truck. *See Calvert*, 227 B.R. at 160.

Admittedly, this case, too, is not directly on point; however, the *Calvert* case illustrates the understanding that a certificate of title is not proof of the contents noted thereon. Other courts have similarly recognized this proposition. Cases from New York recognize that the a certificate of title is prima facie evidence of the information contained thereon. *See Chrysler Financial Co., LLC., v. Schlant*, 243 B.R. 613 (W.D.N.Y.2000); *Green v. Arcadia Financial Ltd.*, 174 Misc.2d 411, 663 N.Y.S.2d 944 (Sup.Ct.1997); *In re Beaudoin*, 160 B.R. 25 (Bankr.N.D.N.Y.1993).

In *Chrysler Financial*, the district court reversed a holding by the bankruptcy court that the Chrysler Financial did not have a perfected security interest in the bankrupt's automobile because the certificate of title did not list Chrysler as the lienholder. *See Chrysler Financial*, 243 B.R. at 614. The *Chrysler* court held that a party's security interest was perfected even though the DMV failed to note the secured party's lien on the certificate of title. *See id.* at 620. Chrysler Financial delivered to the DMV an application for a certificate of title listing it as the lienholder; however; the DMV negligently failed to note this lien on the title. *Id.* at 619. The trustee in bankruptcy argued that the

debtor to pay a specified former lender, that loaned money is "earmarked" for that creditor. So long as the debtor does not exercises control over the disposition of the earmarked funds, the money does not become part of the debtor's estate; thus, no preference occurs. *See* 3 Norton Bankr.L. & Pract. § 57:27.5.

secured party's interest was unsecured because the lien was not noted on the certificate of title. *Id.* at 616. The district court rejected this argument, noting that the information on a certificate of title is not dispositive of the issue. *Id.* at 619. The court stated that the secured party's delivery of the application was sufficient to perfect and that the notation on the lien is little more than an incomplete form of protection to interested parties, i.e., notice of a lien. *See id.* The *Chrysler* court cited New York courts which recognized that the certificate of title is only prima facie evidence of its contents and that the contents may be rebutted. *See id.* at 618 (citing *Fitzpatrick v. Bank of New York,* 124 Misc.2d 732, 480 N.Y.S.2d 157 (App. Term 1983); *Green,* 174 Misc.2d 411, 663 N.Y.S.2d 944 (Sup.Ct.1997)) (recognizing that the certificate of title is only prima facie evidence of the information contained thereon).

In the case *In re Beaudoin,* the court denied the trustee's motion to avoid the lien of creditor that was not noted on the certificate of title. The debtors moved to New York from Michigan and upon arriving in New York surrendered the Michigan title to their vehicle to the New York DMV. *In re Beaudoin,* 160 B.R. at 28. The Michigan title bore the lien of Norway Community Credit Union (Norway), which had a $5,000.00 purchase money security interest in the vehicle that was properly noted on the vehicle's Michigan title. *Id.* The New York DMV issued a new certificate of title without a notation of Norway's lien. *Id.* The trustee sought judicial approval to sell the vehicle free and clear of all liens and Norway requested relief from the stay to pursue its remedies under state law. *Id.* at 28–29. Hearing the two mo-

tions concurrently, the court initially examined what effect the DMV's failure to note Norway's lien on the title had on Norway's security interest. *Id.* at 29.

The court recognized that a security interest in a vehicle must be noted on the certificate of title as a condition of perfection. Indeed, the trustee argued that Norway did not have a valid lien because the certificate of title did not reveal one. The court, however, held that under New York law perfection occurred when the application for a certificate of title was delivered to the DMV. *Id.* at 29–30. The court noted that the certificate of title is only prima facie evidence of ownership and other facts contained thereon. *Id.* at 31. The DMV's omission of Norway's lien was not sufficient to constitute a release or satisfaction of the lien; thus, the trustee was without authority to avoid Norway's lien. *Id.* Again, in this case, a reluctance to assign undue weight to the information contained on a certificate of title is illustrated.

■ Although, the Code of Virginia, unlike the New York Vehicle and Traffic Law,[11] does not contain a provision specifically stating that a certificate of title is prima facie evidence of the facts appearing on it, this court believes that the statute in question here, Va.Code 46.2–638, would be treated by the Virginia Supreme Court in a similar manner as the aforementioned New York courts interpreted the motor vehicle laws of the state of New York. To summarize, the court believes that the well-established and specifically recognized purpose of a notation on the certificate of title is to provide notice. Notice by its very definition admits of inconclusiveness. *See, e.g., U.S. v. San Juan Lumber Co.,* 313 F.Supp. 703, 709 (D.Colo.1969) (recog-

---

**11.** Section 2108(c) of Article 46 of the New York Vehicle and Traffic Law states "[a] certificate of title issued by the commissioner is prima facie evidence of the facts appearing on it."

nizing that adequate notice is notice that is reasonably calculated to apprise all interested parties of action and opportunity to present their objections). Moreover, no Virginia court holds that the contents on a certificate of title are anything more than a source of inquiry notice and a required step to perfect a lien interest.

To conclude that Oakwood has a lien interest in the mobile home by virtue of its name appearing on the certificate of title would require this court to disregard Oakwood's admission that it transferred all of its interest in the retail installment contract and lien to the Trust, and to recognize, instead, that Oakwood's name remaining on the certificate of title is proof that it retained a legal interest in the lien. In other words, Oakwood offers its name on the certificate of title as evidence that the assignment was for less than all interests in the liens, despite its admission to the contrary. Oakwood concedes that there is not any clear statutory support for its position, but argues, by analogy that 11 U.S.C. § 541(d) is instructive on the matter.

The court finds § 541 inapplicable and unhelpful. First, § 541(d) by its very terms applies to debtors and their interest in property that becomes property of the estate. The statute does not apply to a party in Oakwood's position, a creditor claiming legal title to property in the debtor's estate. The court is confident that Congress could have enacted legislation that supports Oakwood's position, but it did not. Moreover, § 541(d) is inapplicable because the property in issue here is a mobile home that is governed by Virginia title law, and not real property.

Also, the argument of Oakwood that § 541's recognition of different interests in property does not support Oakwood's contention that this court should find some basis to apply the concept to this case.

Section 541 merely recognizes that bona fide secondary mortgage market transactions result in the purchase and sale of assets. *Willson v. MLA, Inc. (In re Ascot Mortgage, Inc.)*, 153 B.R. 1002, 1007–08 (Bankr.N.D.Ga.1993) ("It is clear from the plain meaning of the statutory language and the legislative history that Congress intended to protect the secondary mortgage market from intrusion by bankruptcy to the extent that title of a mortgage or security deed was left in the debtor's name for a purpose, such as servicing that mortgage. This is a common practice in the secondary mortgage market.").

■ In essence, this section recognizes the substance of completed mortgage transactions by excluding from the debtor's estate interests in mortgages that were sold prepetition by the debtor in the secondary market. Not infrequently in such transactions the debtor retains the original mortgage note and related documents to make the servicing of the loan more efficient. Since the purchaser typically fails to record its interests arising out of the transactions, section 541(d) prevents any disruption to the asset sale based on the failure of the parties to record the transaction. Section 541(d) is designed, in part, to protect from the trustee in bankruptcy's strong arm powers a purchaser of a mortgage or interest in a mortgage.

■ The necessity of this provision is clear when it is recalled that the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. *See* 11 U.S.C § 541(a). Section 541(d) merely reiterates the principle that an interest which is limited in the hands of the debtor is equally limited in the hands of the estate.

Section 541 does not recognize, however, that the designation of a party's name in a

mortgage or interest in a mortgage is evidence of legal title as a matter of substantive law despite the substance of a particular mortgage market transaction. Rather, § 541 allows the true character of a mortgage market transaction to be recognized in a bankruptcy proceeding. In other words, if the parties intended the seller of a mortgage or interest in a mortgage to retain legal title, for servicing purposes for example, then the Bankruptcy Code will respect that agreement. However, if the parties agreed to transfer all rights in the mortgage or interest in the mortgage to the purchaser, and the seller inadvertently fails to record such under state law, it would be an inappropriate application of the law to allow the seller to claim that it actually retained legal title by relying on § 541, despite an agreement to the contrary. The seller would be turning the purchaser's shield into the seller's sword, and it appears that Oakwood is attempting the same feat here.

Oakwood also argues that its alleged contractual right to service the loan is further evidence of its legal title to the lien. Oakwood, however, did not supply the court with any legal authority to support this assertion, nor did it proffer to the court any documentation corroborating the alleged servicing agreement. Thus, it has failed to follow the requirements of Rule 56(e) and the position cannot establish a genuine issue for trial to defeat the Trustee's motion. Even assuming that Oakwood truly does have the right to service the loan, this court is not aware of any statutory basis or case authority that would lead to a finding that Oakwood had a security interest on the petition date.

## CONCLUSION

Oakwood fails to carry its burden to set forth specific facts showing a genuine issue for trial. There is no statutory support for Oakwood's position, nor do any reported cases shore up its position that having its name on the title is sufficient to give it lien status after the transfer of the security interest. The court holds that the undisputed assignment by Oakwood of all of its interest to the Trust extinguished Oakwood's security interest and lien and, therefore, the Trustee in bankruptcy prevails as a matter of law under 11 U.S.C. § 544. Accordingly, it is

### ORDERED:

That the Trustee's motion for summary judgment is GRANTED.