ELECTRONIC CITATION:  2007 FED App. 0014P (6th Cir.)
File Name:  07b0014p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re:  MICHAEL W. JOHNSON,

Debtor.

ROBIN BROWNING BROCK, TRUSTEE

Plaintiff-Appellant,

v.

BRANCH BANKING & TRUST CO.,

Defendant-Appellee.

No. 06-8055

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at Pikeville.
No. 05-70411, Adversary No. 05-07159.

Argued:  February 7, 2007

Decided and Filed:  December 21, 2007

Before:  GREGG, LATTA & PARSONS, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ARGUED:**  Carolen M. Friend, FRIEND & ASSOCIATES, Lexington, Kentucky, for Appellant. Christopher A. Conley, CAMPBELL, WOODS, BAGLEY, EMERSON, McNEER & HERNDON, Ashland, Kentucky, for Appellee.  **ON BRIEF:**  Carolyn M. Friend, FRIEND & ASSOCIATES, Lexington, Kentucky, for Appellant.  Christopher A. Conley, Keri E. Hieneman, CAMPBELL, WOODS, BAGLEY, EMERSON, McNEER & HERNDON, Ashland, Kentucky, for Appellee.

_____

### OPINION

_____

MARCIA PHILLIPS PARSONS, Bankruptcy Appellate Panel Judge.  In this pre-BAPCPA preference action, the trustee appeals the bankruptcy court's ruling that the lien on the debtor's motor vehicle was protected from avoidance by the enabling loan exception, which excepts from avoidance certain security interests perfected within 20 days of the debtor's possession of the collateral. Although the security interest in this case was not actually perfected until it was noted on the vehicle's certificate of title a month after the debtor obtained possession, the court concluded that the security interest was deemed perfected under Kentucky law when the creditor tendered the appropriate documents and fees to the county clerk, an act which occurred 14 days after possession. Because the majority of the Panel concludes that perfection as defined by the Supreme Court in

1

*Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 216, 118 S. Ct. 651 (1998), occurred more than 20 days after the debtor obtained possession, the bankruptcy court's decision is reversed.

## I.   ISSUE ON APPEAL

The issue presented is whether the security interest in this case was perfected, as defined by federal bankruptcy law, within 20 days of the debtor obtaining possession of the collateral such that the enabling loan exception to preferences is applicable.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the BAP and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order granting summary judgment for the defendant is a final order. *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839, 840 (B.A.P. 6th Cir. 1998). An order disposing of a motion to alter or amend a prior judgment is likewise a final order for purposes of appeal. *GenCorp*, *Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 832-33 (6th Cir. 1999).

The bankruptcy court's grant of summary judgment is reviewed de novo. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001). The bankruptcy court's interpretation and application of the Bankruptcy Code and pertinent state law are reviewed de novo. *Ruskin v. DaimlerChrysler Servs. N. Am., L.L.C. (In re Adkins)*, 425 F.3d 296, 298 (6th Cir. 2005); *Van Aken v. Van Aken (In re Van Aken)*, 320 B.R. 620, 623 (B.A.P. 6th Cir. 2005). The bankruptcy court's denial of the Trustee's motion to alter or amend the grant of summary judgment is also reviewed de novo. *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1047 (6th Cir. 2001) (Although denial of a motion to alter or amend judgment is typically reviewed for abuse of discretion, "a de novo standard" applies when the "motion seeks review of a grant of summary judgment."). "De novo review means that the appellate court determines the law independently of the trial court's determination." *In re Periandri*, 266 B.R. at 653. No deference is given to the bankruptcy court's conclusions of law. *Mktg. and Creative Solutions, Inc. v. Scripps Howard Broad. Co. (In re Mktg. and Creative Solutions, Inc.)*, 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006).

## III.   FACTS

The relevant facts were stipulated before the bankruptcy court. On February 8, 2005, Michael W. Johnson ("Debtor") purchased a 2005 Dodge Ram pickup truck from Jeep & Suzuki Auto World of Big Stone Gap, Virginia and executed an installment sales contract and security agreement with Branch Banking & Trust Co. ("BB&T") to finance the purchase. That same day, the Debtor took possession of the truck. On February 17, 2005, Jeep & Suzuki Auto World mailed a title lien statement, application for certificate of title, and required fees to the Letcher County, Kentucky clerk's office by certified mail, return receipt requested. The Letcher County clerk received the mailed documents and fees on February 22, 2005, as indicated by the signed return receipt. However, the clerk did not stamp the documents as received and upload BB&T's lien for recordation until March 7, 2005, almost two weeks later. On March 25, 2005, the Commonwealth of Kentucky Transportation Cabinet issued the appropriate certificate of title, reflecting notation of BB&T's lien on March 7, 2005.

Less than 90 days later, on May 11, 2005, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[1] Thereafter, Robin Browning Brock, the chapter 7 trustee ("Trustee"), filed a complaint to avoid the lien of BB&T as a preferential transfer. Upon cross motions for summary judgment, the bankruptcy court granted summary judgment in favor of BB&T and dismissed the complaint with prejudice. The Trustee subsequently moved to alter or amend the judgment, but the court denied the motion. The Trustee then timely appealed.

## IV. DISCUSSION

Under § 547(b) of the Bankruptcy Code, a trustee may avoid as impermissibly preferential certain transfers of interests of the debtor in property that occur within 90 days prior to the filing of a bankruptcy petition, unless the transfer falls within one of the exceptions specified at § 547(c). Although the creation of a security interest is considered a transfer, s*ee* 11 U.S.C. § 101(54)(A), and thus subject to potential avoidability, one of the § 547(c) exceptions is the so-called "enabling loan" exception which protects from avoidance the creation of a security interest in property acquired by the debtor, if among other things, the security interest is "perfected on or before 20 days after the debtor receives possession of such property." 11 U.S.C. § 547(c)(3)(B).[2] Perfection, as used in this provision, turns on the definition provided by § 547(e)(1)(B): "a transfer of . . . property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."

In the *Fink* decision, the Supreme Court clarified what Congress meant in this definition. The Court began by noting that in the bankruptcy context, Congress has used the word "perfection" in at least two different ways. *Fink*, 522 U.S. at 215. According to the Court, "Congress sometimes used the word 'perfection' to mean the legal conclusion that for such purposes as calculating priorities [among liens] perfection of a lien should be treated as if it had occurred on a particular date, and sometimes [Congress] used it to refer to the acts necessary to support that conclusion." *Id.* The Court held that § 547(e)(1)(B) was the latter, not the former, and gave as an example of the

---

[1] Because the Debtor's bankruptcy case was filed before October 17, 2005, the effective date of BAPCPA, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

[2] The pre-BAPCPA version of § 547(c)(3) applicable to this case provided:
The trustee may not avoid under this section a transfer—

   . . . .

(3) that creates a security interest in property acquired by the debtor—

   (A) to the extent such security interest secures new value that was
      (i) given at or after the signing of a security agreement that contains a description of such property as collateral;
      (ii) given by or on behalf of the secured party under such agreement;
      (iii) given to enable the debtor to acquire such property; and
      (iv) in fact used by the debtor to acquire such property; and
   (B) that is perfected on or before 20 days after the debtor receives possession of such property[.]

11 U.S.C. § 547(c)(3). Only § 547(c)(3)(B)'s 20-day requirement is at issue. BAPCPA extended the 20-day period to 30 days.

-3-

former, § 546(b)(1)(A), which "speaks of state laws that permit 'perfection . . . to be effective . . . before the date of perfection.'" *Id.* at 215. The Court explained that perfection in the § 547(e)(1)(B) sense was not "the legal conclusion that may be entailed by applying a relation-back rule," but instead was "the acts taken to trigger an application of the rule." *Id*. at 216.

> Although [Appellant] and two Courts of Appeals have thought [§ 547(e)(1)(B)] means that a transfer is perfected as of whatever date an enabling creditor could claim in a priority fight with a contract creditor armed with a judicial lien, the statute does not speak in such terms. Rather, it says that a transfer is perfected "when" a contract creditor "cannot acquire" a superior lien. "[W]hen" and "cannot acquire" are ostensibly straightforward references to time and action in the real world, not tipoffs (like the terms "as if" and "deemed") that the clock is being turned back in some legal universe. A creditor "can" acquire such a lien at any time until the secured party performs the acts sufficient to perfect its interest. Such a lien would, of course, lose its priority if, during the relation-back period, the secured party performed those acts; such a possibility does not mean that a contract creditor "cannot" acquire such a lien, however, but merely that its superiority may be fleeting. Not until the secured party actually performs the final act that will perfect its interest can other creditors be foreclosed conclusively from obtaining a superior lien. It is only then that they "cannot" acquire such a lien. Thus, the terms of § 547(e)(1)(B) apparently imply that a transfer is "perfected" only when the secured party has done all the acts required to perfect its interest, not at the moment as of which state law may retroactively deem that perfection effective.

*Id.*

Although the Supreme Court in the preceding paragraph spoke in terms of acts by the secured party, another passage in the opinion clarifies that:

> In speaking below of acts necessary to perfect a security interest under state law, we mean whatever acts must be done to effect perfection under the terms of the applicable state statute, whether those be acts of a creditor or *acts of a governmental employee delivering or responding to a creditor's application*.

*Id*. at 213, n.1 (emphasis added).

Lastly, in this regard, the Court in *Fink* emphasized that while state law determines the means of perfection, the timing of perfection for preference purposes is governed by federal law. *Id.* ("[T]he time within which those acts [to effect perfection under state law] must be done is governed by federal, not state, law, when the issue is the voidability of a preference under the Bankruptcy Code."). As explained by the Court: "Congress did not intend state relation-back provisions or grace periods to control a trustee's power to avoid preferences. . . . Congress quite specifically intended a trustee's power to avoid prepetition preferences to prevail over any state rules permitting relation back." *Id.* at 217.

With this guidance, we turn to the case at hand. The bankruptcy court held that perfection occurred under Kentucky law upon receipt of the title documents and fees by the county clerk on February 22, 2005, and that because this act took place 14 days after the Debtor took possession of the pickup truck on February 8, 2005, perfection fell within the enabling loan exception. This ruling was based upon Kentucky Revised Statute § 186A.195(5) which provides:

> The security interest noted on the certificate of title shall be deemed perfected at the time the security interest attaches (KRS 355.9-203) if the secured party tenders the required fees and submits a properly completed title lien statement and application for first title or, in the case of property previously titled in the name of its debtor, the

certificate of title to the appropriate county clerk within twenty (20) days of attachment. Otherwise, the security interest shall be deemed perfected at the time that such fees are tendered and such documents are submitted to the appropriate county clerk.

The parties agree that "attachment" within the purview of this statute occurred when the Debtor obtained possession of the truck on February 8, 2005. Because BB&T tendered the required fees and documents to the county clerk within 20 days of attachment on February 8, 2005, it contends that it was deemed perfected under Kentucky Revised Statute § 186A.195(5) that same day. Alternatively, BB&T asserts that regardless of whether perfection is measured under Kentucky Revised Statute § 186A.195(5) from the date of attachment or from the date of tender, both dates occurred within 20 days of the Debtor obtaining possession of the vehicle, and therefore, satisfied § 547(c)(3)(B)'s 20-day perfection requirement. The bankruptcy court agreed, concluding that because perfection is deemed to occur pursuant to Kentucky Revised Statute § 186A.195(5), at the latest, upon tender, and because BB&T tendered the appropriate documents and fees within 20 days of possession,[3] the enabling exception provided for in §547(c)(3) was applicable.

Notably, Kentucky Revised Statute § 186A.195(5) states that a security interest shall be *deemed* perfected at attachment or tender. It does not state that it *is* perfected. The dissent and BB&T acknowledge that notation of the security interest on the vehicle's certificate of title is the only way that a lien on a motor vehicle is perfected in Kentucky. (Ap. Br. at 1-4.). Kentucky law is clear on this point. *See* Ky. Rev. Stat. Ann. § 186A.190(1) ("[T]he perfection and discharge of a security interest in any property for which has been issued a Kentucky certificate of title shall be by notation on the certificate of title."); Ky. Rev. Stat. Ann. § 186A.190(2) ("the sole means of perfecting . . . a security interest in property for which a certificate of title is required by this chapter is by notation on the property's certificate of title").[4] Moreover, it is undisputed that actual notation by the county clerk did not take place until March 7, more than 20 days after the debtor obtained

---

[3] Because both the mailing of the title documents and fees and the receipt by the clerk took place within the required 20 days, it was not necessary for the bankruptcy court to address whether mere mailing would have constituted tender within the meaning of Kentucky Revised Statute § 186A.195(5). Similarly, the majority of this Panel reaches no conclusion on this issue since there is no dispute that tender, regardless of whether it was effected by mere mailing or receipt, occurred within 20 days of attachment. As such, the majority is perplexed by the dissenting judge's statement in Part A of the dissent that the majority has "adopted" the Trustee's position that "mail delivery is not the same as tender."

[4] Case law confirms that notation is essential and that the absence of notation renders the security interest unperfected, even where the secured creditor made proper tender of the necessary documents and fees. *See LSA Leasing Corp. v. Phipps Constr. Co.*, 972 F.2d 347, 1992 WL 172131, *2 (6th Cir. July 22, 1992) (unpublished table decision) (notwithstanding tender of fees and filing of financing statement evidencing its security interest, security interest not perfected due to clerk's error in failing to note lien on title)*; Masterton v. Huntington Nat'l Bank (In re Ulinski)*, 317 B.R. 716, 719-20 (Bankr. E.D. Ky. 2004) (despite compliance by creditor with all of the acts required to perfect its lien, i.e., tendering executed title lien statement, court rejected secured creditor's argument that it was perfected under Kentucky Revised Statute § 186A.195(5), the "deemed perfected" statute, and held that the creditor's lien was unperfected because it was not noted on the certificate of title); *Westenhoefer v. Navistar Fin. Corp. (In re Daulton)*, 155 B.R. 7, 8 (Bankr. E.D. Ky. 1993) ("Where a creditor has properly filed a financing statement but the clerk has failed to note the lien on the certificate of title, the lien is unperfected and the trustee in bankruptcy, as judgment lien creditor, prevails over the unperfected lien creditor."); *Higgason v. Hyden Citizens Bank (In re Farmer)*, No. 89-0005, 1989 WL 306192, *4 (Bankr. E.D.Ky. Nov. 6, 1989) (notwithstanding secured creditor's filing of financing statement and payment of fees, creditor unperfected due to clerk's failure to note lien on certificate of title).

possession of the pickup truck on February 8.[5]   Nonetheless, the dissent and BB&T maintain that once BB & T's security interest was noted on the certificate of title, perfection was measured from its tender of the required documents and fees to the county clerk pursuant to Kentucky Revised Statute § 186A.195(5)'s "deemed perfected" language.

There are no cases which address how Kentucky Revised Statute § 186A.195(5)'s deemed perfection language interacts with Kentucky Revised Statute § 186A.190's directive that the sole means of perfecting a security interest on a motor vehicle is by notation.  However, it appears from the statutory scheme as a whole that § 186A.195(5) was designed to specify the timing of perfection for the purposes of determining priority among competing creditors.  If a secured creditor tenders the appropriate documents and fees and its security interest is subsequently noted on the certificate of title, the timing of its perfection will relate back to the date of tender or to the date of attachment pursuant to § 186A.195(5) and defeat any intervening creditor.  In other words, Kentucky Rev. Stat. Ann. § 186A.195(5) is a type of state law that "permits perfection to be effective before the date of perfection."  *Fink*, 522 U.S. at 215.  As such, the statute is precisely the type of perfection rejected in *Fink* because it engages in a legal fiction to treat perfection for priority purposes "as if" it occurred on a date other than on which it actually occurred. Kentucky Revised Statute § 186A.195(5)'s use of the word "deemed" is consistent with the Supreme Court's warning that such words indicate that "the clock is being turned back in some legal universe." *Fink*, 522 U.S. at 216.[6]

---

[5] As previously cited, Kentucky Revised Statute § 186A.190(1) provides that "the perfection and discharge of a security interest in any property for which has been issued a Kentucky certificate of title shall be by notation on the certificate of title. The notation of the security interest on the certificate of title shall be in accordance with this chapter [Ky. Rev. Stat. Ann. Ch. 186A ] and shall remain effective from the date on which the security interest is noted on the certificate of title for a period of seven (7) years, or, . . . until discharged . . . ."  Ky. Rev. Stat. Ann. § 186A.190(1).   In order for the notation to be "in accordance with this chapter [Ky. Rev. Stat. Ann. Ch. 186A] ," the creditor is required to submit a properly completed title lien statement and application for first title and to tender required fees to the county clerk.  Then, the "county clerk shall . . . note the security interest on the certificate of title." Ky. Rev. Stat. Ann. § 186A.195(1).  The clerk is also directed to enter the information, including "the date the lien was noted" from the title lien statement submitted by the secured party into the automated system so as to produce a certificate of title bearing the "lienholder's name, mailing address and zip code, the date the lien was noted, the notation number, and the county in which the security interest was noted." Ky. Rev. Stat. Ann. §§ 186A.195(2) and 186A.190(6).  In this case, the certificate of title issued March 25, 2005, indicates that the lien was noted on March 7, 2005, (no.500621) by the Letcher County Clerk.

[6] In Part D, the dissent attempts to distinguish Kentucky law from the deemed perfection language rejected in *Fink* by stating that "[t]he use of the term 'deemed' [in Kentucky Revised Statute § 186A.195(5)] does not indicate that perfection occurs at a time earlier than it actually occurs" because "[t]he notation of the date of the lien . . . upon the certificate of title issued by the county clerk would normally constitute the date of tender."  However, there is no indication in the Kentucky statutory scheme that this is the case. Kentucky Revised Statute § 186A.195(1) does state that "[u]pon submission of the title lien statement, the county clerk shall use the information contained therein to note the security interest on the certificate of title."  While the use of the word "upon" suggests a certain immediacy, there is nothing in the statute or in the record to suggest that notation "normally" occurs on the very same day as tender, rather than the next day or even the next week.  Kentucky Revised Statute § 186A.165 directs the county clerk, upon submission of an application for a first certificate of registration or title, to prepare an application transmittal record by 3:00 p.m. on the next business day after receipt of the application. Yet, even if this statutory mandate is followed, notation could be the day after tender or even three days after tender if the application was received on a Friday, the last day of the business week.

-6-

The dissent and BB & T's assertion that once a lien is noted on the certificate of title, the timing of perfection is *measured* from the document tender date, appears to be true for state law purposes. However, *Fink* directs that federal, rather than state law, determines the timing of perfection in the preference context. *Id.* at 213. Moreover, the very use of the word "measured" suggests an artificial timing, rather than "time and action in the real world" as § 547(e)(1)(B) requires. *Fink*, 522 U.S. at 216.

The Supreme Court made it unequivocally clear in *Fink* that perfection for purposes of the enabling loan exception turns not on these fabricated, relation-back type of statutes, but on the "acts necessary to support [the perfection] conclusion." *Id.* at 215. Additionally, it confirmed that these necessary acts are not limited to acts by the secured creditor but also include "acts of a governmental employee . . . responding to a creditor's application" if such acts are necessary to effect perfection under state law. *Id.* at 213 n.1. Because under Kentucky law a security interest is not truly perfected until actually noted on the certificate of title, it would appear that only at this time is a creditor perfected as defined by § 547(e)(1)(B) for purposes of the enabling loan exception.

The critical inquiry in this regard, as explained by the Court in *Fink*, is at what point in the process did a contract creditor become unable to "acquire" a lien superior to BB&T's security interest. *Fink*, 522 U.S. at 216. BB&T asserts that this point was upon its tender of the requisite title documents and fees and that between the time of tender and the date that the clerk noted BB&T's lien on the title, a contract creditor would not have been able to obtain a superior position because it would have been on notice during this period of time that no certificate of title had been issued, and the only title ever issued noted BB&T's lien. BB&T cites no authority for this assertion, and unfortunately, there is no decision from a Kentucky court precisely on point. However, there are a couple of cases which offer some guidance on Kentucky law in this area. In *General Motors Acceptance Corp. v. Hodge*, 485 S.W.2d 894 (Ky. 1972), the Kentucky Supreme Court concluded that notwithstanding GMAC's filing of a financing statement with the county clerk, the failure of the clerk to note the lien rendered the lien unenforceable as against a purchaser without notice. In reaching this conclusion, the court cited with approval the following passage from American Jurisprudence Second:

> Where statutory provision is made for the notation of liens on motor vehicles on the certificate of title, the failure to comply with such provision generally renders the liens unenforceable as against third persons without actual knowledge thereof. In some jurisdictions the recordation of the lien, without the notation, at the same time, of its existence on the certificate of title, is deemed not to convey notice to a third person, and the lien is not enforceable against a purchaser or encumbrancer without notice thereof. It has been held in this respect that where the lien of a chattel

---

It is insignificant to this analysis that notation may actually occur on the same day as tender. By providing that the security interest noted on the certificate of title would be deemed perfected at the time of tender, the Kentucky legislature anticipated that notation would not always take place the same day as tender. The deemed perfection language was a means to ensure that regardless of when the clerk eventually noted the security interest, perfection for purposes of priority would relate back, at the latest, to the date of tender.

It is noteworthy that there is no requirement in the Kentucky statutes that the clerk record the date of tender. It is only by happenstance, the fortuitous decision of BB&T to mail the title documents and fees to the clerk by certified mail, return receipt requested, that we even know the date of tender in this case. *Cf.* Ky. Rev. Stat. Ann. § 382.300(1) (county clerk required to "certify the time when the [deed, mortgage or power of attorney] was lodged in his office"). The absence of any statutory requirement that the clerk record the date of tender belies the importance attributed to the date by BB & T and the dissent.

mortgagee of a motor vehicle is not noted on the certificate of title, a repairman performing work on the vehicle at the instance of the mortgagor is entitled to priority over the lien of the chattel mortgagee.

*Id.* at 896-97 (quoting 7A Am. Jur. 2d, *Automobiles and Highway Traffic* § 46). Similarly, in *Kentucky Finance Co. v. Spradlin*, 717 S.W.2d 843 (Ky. App. 1986), the court held that a secured creditor without knowledge who had relied on a clean certificate of title prevailed over an earlier secured creditor whose lien interest had been deleted on a certificate of title forged by the automobile owner who was also a deputy clerk in the county clerk's office. The court admitted that this result was a harsh one, but one which emphasized the certificate of title as the sole record of liens. *Id.* at 845.

While these cases do not specifically address the time frame between tender and notation, they do advise us that absent notation on the title, a contract creditor or another purchaser is without notice and may prevail over an enabling secured creditor who has tendered lien documents to the county clerk. Of course, the superior position of the contract creditor would be temporary if the lien of the enabling secured creditor is subsequently noted on the title. But, as explained by the Court in *Fink*, "such a possibility does not mean that a contract creditor 'cannot' acquire such a lien, however, but merely that its superiority may be fleeting." *Fink*, 522 U.S. at 216.[7]

In Kentucky, the final act necessary to support the legal conclusion of perfection is notation by the clerk of the lien on the certificate of title. It is only when a security interest is actually noted on the title are other creditors "foreclosed conclusively from obtaining a superior lien." *Id.* Regardless of the prior submission of the appropriate documents and fees by a enabling secured

---

[7] The dissent maintains that the majority should have relied upon the decision of *Fields Motor Co. v. Sturgill*, 129 S.W.2d 1003 (Ky. 1939), with regard to this issue, and that this case supports the proposition that a contract creditor could not obtain, even fleetingly, a superior interest between BB & T's tender and notation of the lien by the clerk. In *Fields Motor*, the court concluded that a seller under a conditional sales contract who had delivered its contract and recording fee to the county clerk prevailed over an attachment lien creditor, even though the clerk had not marked the contract filed or lodged for record and thus, the levying creditor had neither actual or constructive notice of the sales contract. However, as explained by the *Fields Motor* court in its opinion, the basis for this conclusion was that, under the law at that time, conditional sales contracts were in the nature of chattel mortgages, which were perfected merely by filing or lodging the appropriate documents with the clerk. *Id.* at 1004-1005. Thus, it was not surprising that the court concluded that delivery of the required documents and fees to the clerk constituted filing. *Id.* at 1005 (citing *Commonwealth v. O'Bryan, Utley & Company*, 155 S.W. 1126, 1128 (Ky. 1913) ("In modern times it is usually held that a paper is filed on behalf of the party who is required to file it when he has presented it at the proper office and left it with the person in charge thereof and paid the fees for filing, if any are required.").

In contrast to the law in Kentucky at the time of *Fields Motor*, Kentucky law today is clear that actual notation on the title is required before a lien is truly perfected and mere filing or tender is insufficient to constitute notation. *See supra* Footnote 4; *see also Vanderbilt Mortgage & Fin., Inc. v. Griggs (In re Griggs)*, 965 F.2d 54, 56 (6th Cir. 1992) (recognizing that "[i]n 1982, Kentucky converted to a new title system for motor vehicles, under which the secured creditor must perfect its security interest by noting the lien on the certificate of title to the motor vehicle"); *Hiers v. Bank One, West Virginia, Williamson, NA.,* 946 S.W.2d 196, 198 (Ky. App. 1996) ("[A]s to any property for which a certificate of title is required by KRS Chapter 186A, a security interest in that property may be perfected or discharged only by a notation in that vein on the certificate of title."); *Frank v. Second Nat'l Bank of Saginaw (In re Gilbert)*, 82 B.R. 456, 458 (Bankr. E.D. Mich. 1988) (recognizing Kentucky as a state where "actual notation of the secured party's lien on the certificate of title is a pre-requisite for perfection of a security interest in a motor vehicle").

party, a contract creditor can acquire a superior interest until such time as the county clerk notes the enabling creditor's lien on the title. Thus, in the present case, BB&T's security interest was not perfected as defined by § 547(e)(1)(B) until its security interest was noted on the title. Because this act occurred more than 20 days after the Debtor received possession of the vehicle, the enabling loan exception was inapplicable.

A case with facts substantially similar to those herein, albeit under Colorado law, is *Hepner v. Americredit Financial Services, Inc. (In re Baker)*, 345 B.R. 261 (D. Colo. 2006). In *Baker*, a purchase money creditor delivered the lien and title documentation to the county clerk for recording within 20 days of the debtor's purchase of a new motor vehicle, but the clerk failed to record the lien until after the 20-day period had expired. When the debtor filed for bankruptcy relief less than 90 days later, the trustee in bankruptcy sought to avoid the creditor's lien as preferential under 11 U.S.C. § 547(b). In response, the creditor raised the enabling loan exception of 11 U.S.C. § 547(c)(3).

In resolving the issue, the court had to examine the interplay among three Colorado statutes to determine when perfection of a security interest in a motor vehicle occurs under Colorado law. Although one statute indicated that liens on motor vehicles take priority in the same order the lien documentation was filed with the designated government agent, another statute indicated that the lien is not effective until the time a government agent enters the lien and title data into the public central registry. The court concluded that perfection occurred on the date of the latter act since perfection is contingent on providing valid notice of the lien to third parties. In reaching this conclusion, the court observed that the perfection statute operated to relate perfection back to the date of delivery, notwithstanding the lack of express relation back language in the provision. *In re Baker*, 345 B.R. at 273 ("I find no binding authority . . . suggesting express relation back language is necessary before a statute can be found to operate in such a manner. . . . Rather, the key inquiry regarding the existence of a relation back mechanism is whether the statute in question 'authorizes perfection after another party has acquired interests in the property.'"). Because the Colorado Certificate of Title Act assigned motor vehicle lien priority according to the time the mortgage paperwork was delivered, once perfected, the lien would be superior to certain third party interests acquired in the vehicle after the delivery date. *Id*. at 273-74.

Nonetheless, the court concluded that the enabling loan exception did not protect the transaction from avoidance. Even though the creditor would have priority from the date of delivery of its lien documents (a date within § 547(c)(3)(B)'s 20-day period), "the final act necessary for perfection—the entry of the lien notices into the Central Registry—did not occur within twenty days of the debtor taking possession of their vehicles." *Id*. at 274. "[F]or the enabling loan exception to apply, the final act necessary to achieve perfection under state law must have occurred on or before twenty days of the debtor's taking possession of the collateral, regardless of any retroactive effective date designated by a relation back provision." *Id*. at 266 (citing *Fink*, 522 U.S. at 216).[8]

Similarly, in *Hanrahan v. Arcadia Financial Ltd. (In re Scott)*, 245 B.R. 331 (Bankr. N.D. Iowa 2000), a case construing Iowa law, the secured creditor delivered to the county treasurer its application for notation of its lien on the certificate of title within 20 days of the debtor obtaining possession of an automobile, but its lien was not noted until after the 20-day period expired. *Id*. at

---

[8] The dissent attempts to distinguish *Baker* from the present case, by asserting that it is an example of a state law, envisioned by the Supreme Court in *Fink*, where the acts necessary to perfect a security interest under state law include acts of a governmental employee, i.e., adding the lien to an electronic record, unlike Kentucky law which merely requires tender of the appropriate documents by the secured creditor. However, as we explain in the body of the majority's opinion, the state laws of Colorado are analogous to those in Kentucky: in both states the final act necessary to achieve perfection is performed by the state official (in Kentucky noting the lien on the title, while in Colorado creating an electronic record of the lien).

333. After the debtor's bankruptcy filing less than 90 days later, the trustee moved to avoid the creditor's security interest as preferential. The creditor asserted the enabling loan defense of § 547(c)(3), arguing that perfection occurred upon delivery of the documents pursuant to § 321.50(1) of the Iowa Code which provides that a "security interest in a vehicle . . . is perfected by the delivery to the country treasurer . . . of an application for certificate of title which lists the security interest." *Id*. at 334. There was no mention of a notation requirement in this paragraph which dealt generally with the secured party's rights in the vehicle. Rather, the Iowa statute only referenced notation in succeeding paragraphs describing the county treasurer's duty to note the interest on the vehicle's title. *Id*. (quoting Iowa Code §§ 321.50(2) and (3)). Nonetheless, the Iowa Supreme Court had stated in interpreting the provision that a "written application for certificate of title or for notation of the security interest is required to *establish* a security interest in a motor vehicle. The security interest is then *perfected* by notation upon the certificate of title." *Id*. (quoting *Blessing v. Norwest Bank Marion*, 429 N.W.2d 142, 144 (Iowa 1988)). Based on this interpretation, the bankruptcy court concluded that the secured creditor was not entitled to the enabling loan defense of § 547(c)(3) because the Iowa Supreme Court would not find the creditor's lien enforceable against a judgment creditor until it was noted on the vehicle's title. *Id*. at 334-35; *cf. Fluharty v. Citizens Nat'l Bank (In re Horner)*, 248 B.R. 516 (Bankr. N.D. W. Va. 2000) (concluding that enabling exception protected preference from avoidance where under West Virginia law perfection occurs upon delivery as opposed to notation). *But see Huennekens v. Abruzzese (In re Abruzzese)*, 252 B.R. 341 (Bankr. E.D. Va. 1999) (concluding that Virginia law provides that perfection occurs on date an ultimately successful application is submitted).

For the foregoing reasons, the majority of the Panel concludes that the enabling loan exception does not protect the perfection of BB&T's lien from avoidance as a preferential transfer. Although this is admittedly a harsh result for creditors like BB&T, we conclude that it is compelled by *Fink*. "Congress intended § 547(c)(3)(B) to establish a uniform federal perfection period immune to alteration by state laws permitting relation back." *Fink*, 522 U.S. at 220.

## V.  CONCLUSION

The Debtor obtained possession of his new pickup truck on February 8, 2005. BB&T's security interest was perfected on March 7, 2005, when the interest was noted on the truck's certificate of title. Because perfection did not occur within 20 days after the debtor received possession of his truck, the enabling loan exception of 11 U.S.C. § 547(c)(3) was unavailable to protect BB&T's interest from avoidance as a preferential transfer. The decision of the bankruptcy court is **REVERSED**.

JENNIE D. LATTA, Bankruptcy Appellate Panel Judge, dissenting. Because I do not agree with the majority of the Panel that the lien was perfected outside the applicable time period for the enabling loan exception, I respectfully dissent.

Section 547(b) of the Bankruptcy Code permits a trustee to avoid certain transfers of interests of the debtor in property that occur within ninety days prior to the filing of a bankruptcy petition, unless the transfer falls within one of the exceptions specified at section 547(c). BB&T relies upon the so-called enabling loan exception, which provides:

> (c) The trustee may not avoid under this section a transfer–
>> (3) that creates a security interest in property acquired
>> by the debtor--
>>> (A) to the extent such security interest secures
>>> new value that was--
>>>> (i) given at or after the signing of a
>>>> security agreement that contains a
>>>> description of such property as
>>>> collateral;

(ii) given by or on behalf of the secured party under such agreement;
(iii) given to enable the debtor to acquire such property; and
(iv) in fact used by the debtor to acquire such property; and
(B) that is perfected on or before 20 days after the debtor receives possession of such property.[1]

11 U.S.C.A. § 547. The creation of a security interest is a transfer for purposes of the Bankruptcy Code. *See* 11 U.S.C. § 101(54)(A). The security interest of BB&T was created when it attached on February 8, 2005. The question raised by this appeal is whether it was perfected on February 22, as asserted by BB&T, or on March 7, as asserted by the Trustee.

Perfection for purposes of section 547 occurs "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee" under applicable state law. *See* 11 U.S.C. § 547(e)(1)(B). Kentucky law specifies that notation upon the certificate of title is the only method for perfecting a security interest in a motor vehicle. Ky. Rev. Stat. Ann. § 186A.190(1). Notation is initiated by the submission of a properly completed title lien statement and application for first title together with the required fee to the county clerk. Ky. Rev. Stat. Ann. § 186A.190(6). The county clerk is then required to enter the information provided by the secured party in the Automated Vehicle Information System (AVIS), and forward the application to the Department of Vehicle Regulation no later than 3:00 p.m. on the next business day after the application is received. Ky. Rev. Stat. Ann. §§ 186A.195(1); 186A.165. Kentucky law further provides that,

The security interest noted on the certificate of title shall be *deemed perfected* at the time the security interest attaches (KRS 355.9-203) if the secured party *tenders* the required fees and submits a properly completed title lien statement and application for first title . . . within twenty (20) days of attachment. Otherwise, the security interest shall be deemed perfected at the time that such fees are tendered and such documents are submitted to the appropriate county clerk.

Ky. Rev. Stat. Ann. § 186A.195(5)(emphasis added).

As noted, it is stipulated that the security interest here attached on February 8, 2005, and that the county clerk received the required documents and fee by certified mail on February 22, 2007, within twenty days of attachment. It is further stipulated that, notwithstanding this fact, the clerk did not stamp the documents as received or upload them into the AVIS system until March 7, 2007. The certificate of title was not issued until March 25, 2005, but it was issued prior to the filing of the Debtor's petition in bankruptcy. The certificate of title correctly notes the lien of BB&T, but notes the date of the lien as March 7, 2005.

The question presented in this appeal appears to be one of first impression. The Kentucky Supreme Court has not determined when perfection of a lien on a motor vehicle occurs if the applicant completes all acts required for perfection within the time specified by statute, but the county clerk processes the application outside of that time period. The Trustee and the majority of the Panel take the position that, notwithstanding Kentucky Revised Statute §186A.195(5), at least in the context of a bankruptcy case, perfection does not occur until the lien is actually noted on the certificate of title. It is unclear whether their position is that relation back is never permitted, or that relation back is only permitted when the lien is actually noted on the certificate of title within twenty

---

[1] BAPCPA extended this period from twenty to thirty days.

days after attachment. The Trustee makes essentially two arguments: (1) the period between the mailing of documents to the county clerk and notation on the certificate of title creates a "no man's land," during which a hypothetical judgment lien creditor could obtain a superior position to that of the secured lender; and (2) "strict compliance" with the Kentucky statutes requires actual notation of the lien within twenty days after attachment. I will consider the Trustee's arguments in turn.

## A. The Distinction Between Mailing and Tender is Irrelevant to the Outcome in this Case

The Trustee argues that notwithstanding the language of the Kentucky statute, which permits perfection to be deemed to have occurred at a point in time earlier than notation of the lien on the title, where a creditor merely mails documents to the county clerk, there is a gap period during which a creditor on a simple contract *could* obtain a judicial lien superior to that of the transferee. The Trustee maintains that mailing is not equivalent to tender under Kentucky law.

In support of her position, the Trustee relies upon *Fidelity Financial Services, Inc. v. Fink,* 522 U.S. 211, 118 S. Ct. 651 (1998). In that case, the Supreme Court held that a creditor may not invoke the enabling loan exception if it performs the acts necessary to perfect its security interest more than twenty days after the debtor receives the property but within a relation back or grace period that exceeds twenty days provided by otherwise applicable state law. *Fink*, 522 U.S. at 221. In *Fink*, a creditor mailed the necessary documents to perfect its security interest to the Missouri Department of Revenue twenty-one days after the debtor took possession of a vehicle. Missouri law treated a lien as perfected if the creditor filed the necessary documents within thirty days after the debtor received possession of the collateral. The court held that the creditor could only invoke the enabling loan exception if its acts to obtain perfection occurred within the twenty-day period provided by the Bankruptcy Code, not any longer period provided by state law.

The present case is factually distinguishable from *Fink*. BB&T performed *all* the acts necessary to perfect its lien within twenty days after attachment of its security interest. Not only did BB&T mail the necessary documents to the county clerk, but, according to the stipulated facts, they were actually received within twenty days after attachment. BB&T is not relying upon a state-law period for perfection longer than that provided by bankruptcy law as was the case in *Fink*. Rather, it asserts that it did all that was necessary under Kentucky law to perfect its lien when it tendered the necessary documents and fee to the county clerk. BB&T does not assert that mere mailing is equivalent to tender, because it does not have to. The required documents and fee were in fact tendered (actually received and in the possession of the county clerk) fourteen days after the security interest attached. According to BB&T, Kentucky law specifies that when tender is accomplished within twenty days after attachment, perfection is deemed to have occurred when the security agreement attached, notwithstanding the intervening negligence of the clerk in failing to timely record the lien.

The Trustee counters by arguing that, as a matter of fact, the lien was not perfected at the time the bankruptcy case was filed because it had not been actually noted on the title within twenty days after attachment. (Brief of Appellant, at 3-4.) The Trustee points out that the mere mailing of documents to the court clerk cannot provide notice of the type that would defeat her position as an "ideal judgement lien creditor without knowledge." (Brief of Appellant, at 3 (citing *Kaye v. Williams (In re Munzenreider)*, 34 B.R. 82 (Bankr. M.D. Fla. 1983).) The Trustee asserts that mail delivery is not the same as tender. The majority of the Panel adopts this position. I do not believe that it is necessary to decide whether mail delivery is sufficient for tender, however, because in this case, the parties have stipulated that the documents were not only mailed, but were actually received by the county clerk within twenty days after the debtor received possession of the collateral. The appropriate documents and fee were received by the county clerk fourteen days after the debtor received possession of the collateral, well in advance of the twenty-day deadline. Given these facts, the Trustee's argument that creditors cannot "wait until the very last days allowed to submit application by mail," is inapposite. The county clerk is under a statutory duty to enter the

information in the electronic recording system before 3:00 p.m. on the next business day following tender. Ky. Rev. Stat. Ann. §§ 186A.195(1); 186A.165. But for the breach of this duty by the county clerk, the lien of BB&T would have been noted on the title within twenty days after its security interest attached.

More to the point, the lien of BB&T was actually noted on the title prior to the filing of the Debtor's bankruptcy petition. The lien was perfected, under any theory, no later than March 25, 2005. The bankruptcy petition was not filed until May 11, 2005. The Trustee's status as hypothetical judgment lien creditor is determined as of the date of filing. As of May 11, 2005, without question, the Trustee had notice of the lien of BB&T. The lien of BB&T was perfected as of the time of filing. The better argument is that the lien may be avoided because it was noted on the title within the ninety-day preference period but not within twenty days after attachment. This is the thrust of the Trustee's second argument.

### B. "Strict Compliance" with the Requirement of Notation on a Certificate of Title does not Resolve the Question of Time of Perfection

The Trustee argues that "strict compliance" is necessary for perfection under Kentucky law. Again, the majority appears to adopt this position. The Trustee and the majority assert that a lien must actually be noted on the certificate of title before perfection can occur. This point is actually not in dispute, however. While it is beyond question that Kentucky law requires notation upon the certificate of title to perfect a lien in property for which a certificate of title is required, this does not resolve the question of when perfection occurs when a lien is in fact noted. The lien of BB&T was perfected no later than March 25, 2005. The real question raised in this appeal is whether, pursuant to Kentucky law, it was perfected earlier than that, on February 22, 2005, when BB&T completed the acts necessary for perfection, i.e., it tendered the required documents and fee to the county clerk.

The Trustee relies upon a number of decisions to support her argument, all of which are factually distinguishable from the present case. The first case relied upon by the Trustee is *Westenhoefer v. Nat'l City Bank (In re Reagan),* Case No. 96-60353, Adv. Proc. No. 96-6022 (Bankr. E.D. Ky. 1993), an unreported decision. In *Reagan*, the parties stipulated that the proper documents and fees were tendered to the county clerk forty-five days after the security interest attached. The certificate of title was issued twenty-four days thereafter, but the bank's lien was not noted on the certificate. The bankruptcy case was filed almost seventeen months thereafter and even then, the bank's lien was not noted on the title. Under these facts, not surprisingly, in accordance with 11 U.S.C. § 544, the bankruptcy court held that the lien was not perfected at the time of the filing of the bankruptcy case.

The second case relied upon by the Trustee is *Westenhoefer v. Navistar Financial Corporation (In re Daulton)*, 155 B.R. 7 (Bankr. E.D. Ky. 1993). That case was also decided on a joint stipulation of facts. The debtors purchased a tractor-trailer. The purchase contract granted a security interest to the seller, who assigned the contract to Navistar. The vehicles were shipped to Arkansas for customization and then to Louisville where they were leased out. Although the debtors obtained an "Illinois Apportionment Identification Card," the vehicles were never registered in any state. The certificates of origin assigned to the debtors contained notations of the lien of Navistar, but no financing statement was ever filed and no certificate of title was ever issued. The debtors filed a chapter 7 petition and the trustee sought to avoid the liens pursuant to 11 U.S.C. § 544. Again, not surprisingly, the bankruptcy court found that the liens were unperfected. The question before the court was whether notation of the liens on the certificates of origin were sufficient when the debtor/owner fails to apply for issuance of a certificate of title. Although the opinion contains strong language about the responsibility of lenders to see to the notation of their liens, it is in the referenced context, where the question was whether notation on the certificates of origin might be an alternative method of perfection.

-13-

The third case relied upon by the Trustee is *Higgason v. Hyden Citizens Bank (In re Farmer)*, Adv. Proc. No. 89-0005, 1989 WL 306192 (Bankr. E.D. Ky. Nov. 6, 1989). This is also an unreported decision. The case came before the bankruptcy court on cross-motions for summary judgment. Although the debtors purchased their vehicle on September 13, 1986, and the lender filed a financing statement with the county clerk on September 15, the lien was not noted on the certificate of title, which was issued October 13. The debtors filed their bankruptcy case more than two years later. The lender invoked a Kentucky statute not at issue in the present case, which permitted a lender to update certificates of title outstanding as of March 31, 1988, by having prior liens noted thereon. The statute provided for the relation back of these liens to the date of the financing statement. The lender obtained an updated certificate of title after the filing of the bankruptcy petition, which showed a lien date of September 15, 1986. The bankruptcy court held that the lien was unperfected on the date of the bankruptcy filing pursuant to 11 U.S.C. § 544. On that date, Kentucky law provided that the method of perfection of a lien upon a motor vehicle was by notation on the certificate of title. The court further held that, inasmuch as the bank's right to have an updated certificate of title issued arose six months before the bankruptcy case was filed, its attempt to cure the defect after the filing was too late, and possibly in violation of the automatic stay. The enabling loan exception was not at issue in that case.

The fourth case relied upon by the Trustee is *Richlands National Bank v. Smith,* 34 B.R. 749 (Bankr. D. Va. 1983). That case was decided under Virginia law. The lender had obtained a security interest in two trucks, had noted this fact on the certificates of origin, but had failed to have the liens noted on the certificates of title prior to the filing of a bankruptcy case by the purchaser. The purchase occurred on November 2, 1982. The petition in bankruptcy was filed more than thirty days later, on December 14. At that time, neither certificate of origin had been sent to the Division of Motor Vehicles. The lender sought relief from the automatic stay in order to recover its collateral on the basis that it was not adequately protected (in part because the debtors had failed to timely apply for certificates of title). The debtors opposed the motion on the basis that the lender, without properly perfected liens, was not a secured creditor. The bankruptcy court agreed and the district court affirmed. Again, the enabling loan exception was not at issue.

The fifth case is *Westenhoefer v. Conseco (In re Reynolds)*, Case No. 00-61289, Adv. Proc. No. 01-6009 (Bankr. E.D. Ky. Oct. 4, 2001), another unpublished decision. The case came before the bankruptcy court on cross motions for summary judgment and involved a mobile home, which was purchased by one of the debtors with the intention of having it affixed to real estate. The mobile home was not affixed to real estate, however, at the time of its purchase. The lender provided financing for the purchase of the land and mobile home. No new certificate of title was requested or issued after its purchase by the debtor. Thus, the certificate of title at the time of the filing of the bankruptcy petition showed the prior owners as owner and a prior lender as lienholder. The question presented to the bankruptcy court was whether the mobile home was property of the bankruptcy estate, notwithstanding the erroneous certificate of title. The court ruled that at the time of filing, the debtor had an equitable interest in the mobile home because he had the right to request the transfer of title to his name, but that, under the then applicable Kentucky law, the lien of the lender was unperfected because its lien was not noted on the certificate of title at the time of filing. Again, the case in no way implicates the enabling loan exception.

The sixth case relied upon by the Trustee is the unreported decision of *Westenhoefer v. Bank of McCreary County (In re Sumner)*, Case No. 02-60897, Adv. Proc. No. 02-06415 (Bankr. E.D. Ky. Apr. 28, 2003). The question presented, according to the bankruptcy court, was "whether the equitable principles of equitable subrogation and *de facto* assignment prevail over the 'Strong Arm' powers of a bankruptcy trustee, granted pursuant to 11 U.S.C. § 544, when a refinancing creditor fails to note its lien on the certificate of title to a mobile home, as required by Kentucky law, but the purchasing lien is noted." The court then restated the question as follows, "[I]f the only means of perfecting a security interest in a mobile home under state law is by notation on the certificate of title, and notation is not made by the refinancing creditor but the security interest of the original

creditor has not been released, can the bankruptcy trustee prevail?" The court's answer was "yes." Although the order contains very few facts, it is clear that the case did not involve a question concerning the enabling loan exception (because it was a question concerning a refinancing lender).

The seventh case relied upon by the Trustee is another unreported decision, *In re Raines*, Case No. 89-01606 (Bankr. E.D. Ky. 1989). The case involved the purchase of a pickup truck. Although the lender was noted as the secured party in a filed financing statement, its lien was not noted on the certificate of title when it was issued. The lender argued that it had done all that was required pursuant to Kentucky Revised Statute § 186A.010, when it submitted proper documents to the county clerk together with the required fee for recording the lien notice. *Raines* turns upon whether notation on the certificate of title is the sole means of perfecting a security interest in property for which a certificate of title is required. The court states that the filing of a financing statement is a means of notifying the public prior to the issuance of a certificate of title, but that after the certificate of title is issued, it is the sole means of perfection. While not explicitly stated, it seems clear that the only thing that the secured creditor did was to file the financing statement. It never sought or obtained the issuance of a corrected certificate of title with its lien noted. Again, the case does not involve the enabling loan exception.

None of the bankruptcy cases relied upon by the Trustee involves the enabling loan exception. None of them involves facts in which a lender performed the acts required to have its lien noted on a certificate of title within the statutory period. None of them involves negligence in noting the lien by a county clerk. Other than an occasional citation to *Daulton* for the proposition that secured creditors are charged with responsibility to perfect their liens, none of the cases supports the Trustee's argument that the bankruptcy court's decision in this case is inconsistent with prior case law.

The Trustee then lists three Kentucky decisions, none of which involves the statute at issue in this case. *Laferty v. Wickes Lumber Co.,* 708 S.W.2d 107 (Ky. Ct. App. 1986) raised the question of whether the filing of a complaint satisfied a statutory requirement for separate, pre-filing notice to the homeowner prior to the establishment of a mechanic's lien. The case is not analogous to the present case because in the present case, BB&T did all that was statutorily required to perfect it lien. The creditor in *Laferty* failed to do so.

The Trustee asserts that *Middletown Engineering Co. v. Main Street Realty, Inc.,* 839 S.W.2d 274 (Ky. 1992) requires strict adherence to the statutory provisions for perfecting a lien. Again, the issue presented was the notice required to secure a subcontractor's mechanic's lien against the owner of real property. In *Middletown*, the plaintiff-subcontractor failed to give the required pre-lien notice to the property owner. The Kentucky Supreme Court stated that: "The [mechanic's] lien law confers a right in derogation of common law and all steps prescribed by statute to perfect such lien must be followed . . . ." *Middletown Eng'g*, 839 S.W.2d at 277. Assuming that this strict compliance standard applies to the requirements for perfection of a lien on an automobile, the record establishes that BB&T strictly complied with the applicable statute.

The Trustee also argues that *Jim Skaggs, Inc. v. Smith*, 799 S.W.2d 585 (Ky. Ct. App. 1990) is persuasive. In *Jim Skaggs*, the question was whether a general contractor was precluded from contesting a payment made by a property owner to a subcontractor pursuant to a lien filed by the subcontractor, where the general contractor failed to object to the lien when it was filed. The general contractor filed its objection two days after the statutory deadline, and the court determined that compliance with the requirement of the statute was a "condition precedent" to the raising of an objection. Other than providing another example of "strict compliance," this case does not address an instance where there is strict compliance by the general contractor followed by an official's negligence in noting that compliance.

### C. The Outcome in the Case Does not Turn on the Question of Mailing versus Tender (Reprise)

The third argument advanced by the Trustee is actually a reprise of her first argument. The Trustee's brief contains summaries of various decisions in which the issue was whether "mailing" a document was tantamount to "filing" it or "tendering" it. Her argument is that the decision of the bankruptcy court is inconsistent with rules of statutory construction. Again, even if the Panel were to accept the distinction between mailing and filing or tendering, it does not affect the outcome in this case. The position of BB&T is not that the documents were tendered when they were deposited in the mail, but rather that they were tendered when they were *received* by the county clerk. The authority cited by the Trustee supports the conclusion that actual receipt of the document satisfies the filing requirement. According to the Kentucky Court of Appeals, " until such time as the document actually arrives at the appropriate office, it has not been 'filed' for purposes of a statute mandating its filing." *Revenue Cabinet v. JRS Data Sys., Inc.*, 738 S.W.2d 828, 830 (Ky. Ct. App. 1987). Of course, the statute at issue does not require filing but "tender" which, because it is undefined by the statute or Kentucky case law, may be ascribed its ordinary plain meaning, "to present for acceptance." *Merriam-Webster Online*, (last visited June 26, 2007); *see* Ky. Rev. St. Ann. § 446.080.

### D. The Real Issue in this Case

The real issue in this case is: When is a lien on a motor vehicle "perfected" under Kentucky law for purposes of the Bankruptcy Code? Under the facts of this case, there are four possibilities: (1) the lien was perfected on February 8, 2005, because Kentucky Revised Statute § 186A.195(5) provides that perfection is deemed to have occurred at attachment if the appropriate documents and fee are tendered to the county clerk within twenty days after attachment; (2) the lien was perfected on February 22, 2005, because the Bankruptcy Code requires that all acts necessary for perfection be accomplished within twenty days after attachment, and such acts are completed by tender; (3) the lien was perfected on March 7, 2005, because that is the date that the county clerk acknowledges that it received the necessary documents and fee and uploaded them into the appropriate database; or (4) the lien was perfected on March 25, 2005, when the certificate of title was actually issued with the lien notation on the title.

Had the bankruptcy case not been filed, the lien would have been deemed perfected as of February 8, 2005. Ky. Rev. Stat. Ann. § 186A.195(5). Nothing in the Kentucky statutes or case law mandates to the contrary. Nothing in Kentucky law is made to hinge upon the date documents are processed by the county clerk or upon the date of issuance of the certificate of title. Under Kentucky Revised Statute § 186A.195(5), either perfection is deemed to occur as of the date of attachment (if the appropriate documents and fees are tendered within twenty days of attachment) or perfection is deemed to occur at tender (if this occurs outside that twenty-day period). No other date for perfection is required under Kentucky law. No court has held that another date governs when the secured creditor has completed all steps necessary for perfection. Under Kentucky law, if the appropriate documents and fee are tendered within twenty days, then perfection relates back to the date of attachment. Absent the requisite tender within twenty days, there is no relation back. The use of the term "deemed" in both instances does not indicate that under either possibility, perfection is "deemed" to occur at a time *earlier* than it actually occurs. The notation of the date of the lien, March 7, 2005, upon the certificate of title issued by the county clerk would normally constitute the date of tender. However, the record establishes, based upon the return receipt, that the tender occurred on February 22, 2005. The tender was within twenty days of attachment. Thus, under Kentucky law, the lien of BB&T is deemed perfected on February 8, 2005, the date of attachment.

Because a bankruptcy case was filed, the Panel must examine the possible impact of 11 U.S.C. §§ 547(c)(3) and 547(e)(1)(B), and the Supreme Court's decision in *Fink*. The issue in *Fink* was whether a secured creditor may utilize a state law relation back provision to satisfy the so-called enabling loan exception. The Court said, "no." *Fink*, 522 U.S. at 221. Federal law does not always

override applicable state law to establish a different date for perfection when a bankruptcy case is filed. If a lien is perfected under state law before a bankruptcy case is filed, it is perfected for purposes of the bankruptcy case. The Trustee's "strong arm" powers under 11 U.S.C. § 544 do not permit the Trustee to avoid a lien perfected prior to the bankruptcy filing. The question of whether a lien may be avoided under the strong-arm provisions of 11 U.S.C. § 544 or whether the lien may be avoided under 11 U.S.C. § 547 are different inquiries. The Trustee (and, I would respectfully submit, the majority) has confused the question of whether a lien is perfected with the question of whether a perfected lien may be avoided as a preferential transfer. Because BB&T's lien was perfected before the bankruptcy filing, the proper analysis is only focused upon 11 U.S.C. § 547.

The pertinent issue in this appeal is whether BB&T's perfected lien may be avoided by the Trustee under 11 U.S.C. § 547 notwithstanding the enabling loan safe harbor. Because the relation back provision does not exceed the federal time limitation, state law will govern. *Fink*, 522 U.S. at 213. Rather, notwithstanding the date when a lien is deemed perfected under state law, if federal bankruptcy law is to the contrary it will prevail. *Fink* states "that a creditor may invoke the enabling loan exception only by satisfying state-law perfection requirements within the 20-day period provided by [federal law]." *Id*. The Bankruptcy Code also specifies that, for purposes of the enabling loan exception, "a transfer of . . . property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547 (e)(1)(B). State law perfection under relation back statutes may be inconsistent with, and in derogation of, federal law. Congress uses "perfection" in at least two ways: (1) to indicate "a legal conclusion that for such purposes as calculating priorities [among liens,] perfection should be treated as if it had occurred on a particular date;" and (2) to indicate "the acts necessary to support that conclusion." *Fink*, 522 U.S. at 215. *Fink* states that, for purposes of 11 U.S.C. § 547(e)(1)(B), Congress intended that "perfection" refer to acts. *Id*. at 216. 11 U.S.C. § 547(e)(1)(B) states that the necessary "acts" are those that will prevent a creditor on a simple contract from acquiring a judicial lien superior to the interest of the transferee. In *Fink*, the Court is instructive: "In speaking below of acts necessary to perfect a security interest under state law, we mean *whatever acts must be done to effect perfection under the terms of the applicable state statute*, whether those be acts of a creditor or acts of a governmental employee delivering or responding to a creditor's application." *Fink*, 522 U.S. at 213 n.1 (emphasis added).

Thus, utilizing applicable Kentucky law, this appeal presents the question of whether the submission by a secured creditor of the required documents and fee to the county clerk necessary to have its lien noted on the certificate of title prevents a creditor on a simple contract from acquiring a judicial lien superior to that of the secured creditor during the period between the secured creditor's submission and the actual issuance of the certificate of title with the lien noted on it. As noted, the Kentucky Supreme Court has not answered this precise question. If there is no Kentucky Supreme Court opinion addressing the issue, a federal court must interpret and discern Kentucky law. This Panel is required to make the "best prediction, even in the absence of direct state precedent, of what the [state] Supreme Court would do if it were confronted with [the] question." *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 577 (6th Cir. 2004) (quoting *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000)). To accomplish this end, this Panel "may rely upon analogous cases and relevant dicta in the decisional law of the State's highest court, opinions of the State's intermediate appellate courts to the extent they are persuasive indicia of State Supreme Court direction, and persuasive opinions from other jurisdictions . . . ." *Welsh v. United States,* 844 F.2d 1239, 1245 (6th Cir. 1988); *see also Baumgart v. Alam (In re Alam),* 359 B.R. 142, 147 (B.A.P. 6th Cir. 2006).

Although the Kentucky Supreme Court has not directly addressed the issue, the majority should have relied upon an analogous decision. In *Fields Motor Co. v. Sturgill*, 129 S.W.2d 1003 (Ky. 1939), the court addressed the priority between a chattel mortgage and a judicial attachment levied upon an automobile. The automobile had been sold upon a conditional sales contract, with the seller retaining title as security for the purchase price. The seller mailed the conditional sales

contract together with the requisite recording fee to the county clerk, requesting that its lien be recorded. After the contract was received by the county clerk, but before it was placed of record, other creditors of the purchaser issued an attachment to levy the automobile. The creditors asserted a superior lien because the seller's conditional sales contract had not been recorded and the seller was estopped from asserting priority to the creditors' levy. At trial, the seller prevailed. Because the contract and fee were received by the county clerk before the creditors' levy, the Kentucky Court of Appeals reversed and held that the seller had complied with the perfection requirement. The court explained: "[The seller] had done all [it] could do. [It] had lodged the contract for record and it thereby became notice to purchasers and creditors." *Fields Motor,* 129 S.W.2d at 1005.

*Fields Motor* relied upon *Commonwealth v. O'Bryan, Utley & Company*, 155 S.W. 1126, 1128 (Ky. 1913), in which that court stated, "In modern times it is usually held that a paper is filed on behalf of the party who is required to file it when he has presented it at the proper office and left it with the person in charge thereof and paid the fees for filing, if any are required." *O'Bryan, Utley,* 155 S.W. at 1128. *O'Bryan* held that simply placing the papers in the mail, without proof of actual receipt by the proper authority, was insufficient to establish that the paper was filed. Proof is required that the paper was actually delivered to the proper office in to the custody of one authorized to receive it. *Id.*

Based upon these decisions, I believe that the Kentucky Supreme Court would hold that more is required than mere mailing, but less is required than actual recordation. This is consistent with the Kentucky statute that states that perfection of a lien upon a motor vehicle occurs upon "tender" of the appropriate application and the requisite fee rather than upon issuance of the certificate of title or some other event.

Other jurisdictions are consonant with this interpretation. *Huennekens v. Abruzzese (In re Abruzzese)*, 252 B.R. 341 (Bankr. E.D. Va. 1999) is instructive. In *Abruzzese*, the trustee sought to avoid a lien upon a motor vehicle as a preferential transfer. Application for title and notation of its lien was made by the secured creditor within thirty days after the debtor took possession of the vehicle, but the title was not issued until almost three months thereafter, twenty-nine days prior to the filing of the debtor's bankruptcy petition. The enabling loan exception was not at issue in the case. Rather, the only question was whether the transfer of the security interest occurred within the ninety days prior to the bankruptcy filing, rendering it a preferential transfer. The trustee maintained that the lien was not perfected until the title was actually issued which noted the creditor's lien. Virginia law provided that the creditor's security interest would relate back to the date of purchase if the application for title was made within thirty days of the purchase. Relying upon *Fink*, the bankruptcy court determined that the security interest was not perfected under federal law until the application was filed, because the application was filed outside the federal limitation. *Id.* at 344 n.2. While Virginia law provided that a security interest in a motor vehicle not displayed on the certificate of title was not perfected against third parties, *Abruzzese* determined that this did not address the question of whether or when a security interest might be perfected prior to the issuance of a certificate of title. That court stated that where Virginia law specified the date for perfection, the date of application, rather than the date of issuance of the certificate of title, governed. *Id.* at 344-45. Therefore, *Abruzzese* held that the security interest was perfected on the date that application was made by the secured creditor. *Id.* The Kentucky statutes are analogous to the Virginia statutes described in *Abruzzese.* In Kentucky, perfection is not always measured by the issuance of a certificate of title.[2]

_____

[2] Although Kentucky Revised Statute § 186A.190(1) provides that perfection and discharge of such liens shall be by notation on the certificate of title and "shall remain effective from the date on which the security interest is noted on the . . . title for a period of seven (7) years, or . . . until discharged . . . ." That section also mandates that perfection by notation "shall be in accordance" with chapter 186A of the Kentucky Revised Statutes. As discussed, Chapter 186A includes section 186A.195(5) which directs that once the

-18-

Another analogous decision is *Hepner v. AmeriCredit Financial Services, Inc. (In re Baker),* 338 B.R. 470 (Bankr. D. Colo. 2005), *aff'd,* 345 B.R. 261 (D. Colo. 2006). In *Hepner*, the bankruptcy court held that, under Colorado law, a secured creditor could not rely upon the enabling loan exception where, although its application was submitted within twenty days after purchase, the application was not "filed" until more than twenty days thereafter. The applicable Colorado law required that in order for a lien upon a motor vehicle to be effective as a valid lien, it must have been filed for public record. *Id.* at 475; *see* Colo. Rev. Stat. § 42-6-120 (2004). Colorado defined the word "file" in the statutes dealing with liens upon motor vehicles as "the creation of or addition to an electronic record maintained for a certificate of title by the director [of the Division of Motor Vehicles] or an authorized agent . . ." *Id.;* Colo. Rev. Stat. § 42-6-102(4.4) (2004). Reading these statutes together, the court concluded that the lien was not "filed" until it had been reviewed and accepted for filing by the appropriate official and entered into the appropriate database. Because the review and filing occurred more than twenty days after the purchase, the enabling loan exception was inapplicable. Colorado law provides an example, envisioned by the Supreme Court in *Fink,* in which the acts necessary to perfect a security interest under state law *include* acts of a governmental employee. In contrast, Kentucky law does not require "filing," but merely "tender," and does not define tender, meaning that it may be taken to have its ordinary dictionary meaning, "to present for acceptance." *Merriam-Webster Online,* http://www.m-w.com/cgi-bin/dictionary(last visited June 26, 2007).

I conclude that the lien of BB&T was perfected for purposes of federal bankruptcy law on February 22, 2005, the date when its application and fee were actually received by (i.e., tendered to) the Letcher County Clerk. Because tender occurred within twenty days after the Debtor received possession of the vehicle, February 8, 2005, the enabling loan exception applies. Accordingly, I would affirm the decision of the bankruptcy court.

---

certificate of title bearing the lien notation is issued, perfection is measured from the document tender date without mention of whether or not that is the lien notation date. Accordingly, the former section provides a time limit for duration of the lien's perfection after the title bearing the lien notation is issued while section 186A.195(5) establishes the time of perfection.